**Mary Lucille SANDIDGE, Plaintiff,**

v.

**Ralph J. ROGERS et al., Defendants.**

**No. IP 56–C–253.**

United States District Court
S. D. Indiana,
Indianapolis Division.

Oct. 15, 1958.

554

George E. Weigle, Louis Pearlman, Jr., and J. Frederick Hoffman, Lafayette, Ind., for plaintiff.

Mellen & Mellen, Robert L. Mellen, Bedford, Ind., Alan W. Boyd, Thomas M. Scanlon, Louis A. Highmark, William P. Wooden, and Dwayne M. Berner, Indianapolis, Ind., Barnes, Hickam, Pantzer & Boyd, of counsel, Indianapolis, Ind., for defendants.

HOLDER, District Judge.

This case is submitted on defendants' motion for summary judgment.[1] For the opinion of this Court's ruling on defendants' motion to dismiss the first amended complaint for failing to state a claim upon which relief could be granted see 156 F.Supp. 286 and for the reversing opinion of the United States Court of Appeals see 7 Cir., 256 F.2d 269.

The second amended complaint[2] and the answer in denial and the affirmative

1. See Appendix 1, motion for summary judgment.

2. See Appendix 2, second amended complaint.

defense of the statute of limitations[3] thereto make up the issues of the action.

Pursuant to a pre-trial order, the plaintiff declared that whenever the amended complaint refers to "Anti-Trust Laws" it is intended to mean Sections one and two of the Act of July 2, 1890, known as the Sherman Act, and Sections four, seven, and twelve of the Act of October 15, 1914, known as the Clayton Act (15 U.S.C.A. §§ 1, 2, 15, 18, and 22); "Among the several States", it is intended to mean commerce in crushed stone between the States of Indiana and Illinois; "Market", it is intended to mean the area from which crushed limestone from plaintiff's quarry was sold by Nally, Ballard & Cato, Inc., i. e., Southern Indiana and Southern Illinois; relevant area as to landlords, it is intended to mean the State of Indiana; market as to landlords, it is intended to mean the stone crushers available to such landlords; specific areas where defendants had the power to affect price, quantity, or quality of crushed limestone in interstate commerce, it is intended to mean Lawrence County, State of Indiana, and the results of which might affect price, quantity, or quality of stone flowing from Lawrence County, Indiana, into Southern Illinois; "Stone", it is intended to mean limestone for crushing and not dimensional stone or sandstone.

The evidence offered in support of the motion for summary judgment consists of admissions contained in the pleadings, the depositions, and admissions on file, together with affidavits of Wayne K. Sowers, John A. Ward, H. I. Hansen, John B. Patton, Robert H. Prince, and John G. Sanford.

The evidence offered in opposition to the motion for summary judgment consists of the pleadings and the affidavit of George E. Weigle, attorney for the plaintiff.

The second amended complaint is an action for treble damages and attorney's fees under 15 U.S.C.A. § 15 based upon the alleged violations by the defendants of Title 15 U.S.C.A. §§ 1, 2, 18, and 22.

Prior to the passage of 15 U.S.C.A. § 15b [4] effective January 7, 1956, there was no limitation of action of the United States applicable to 15 U.S.C.A. § 15 and this action. Huntington v. Attrill, 1892, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123; Chattanooga Foundry & Pipe Works v. City of Atlanta, 1906, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241. When the action was barred depends upon the laws of the State of Indiana. The defendants urge that Burns' Indiana Statutes Anno., (1933 Ed. 1946 Repl.) Section 2–602 governs, that plaintiff's action is for the recovery of statutory penalties and must have been commenced within the two years after the action accrued.[5]

Whether an action under 15 U.S.C.A. § 15 is one to recover a statutory penalty within the meaning of the Indiana two-year limitation statute has not been previously decided in a published opinion. However, the Honorable William E. Steckler, Chief Judge of this Court, has heretofore held that it was within the meaning of the Indiana Statute in an unpublished memorandum opinion of December 6, 1957 and was referred to in defendants' brief.

The United States Court of Appeals for the Seventh Circuit has decided that similar provisions of the Illinois and Wisconsin Statutes apply to an action under 15 U.S.C.A. § 15. Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 1951, 191 F.2d 912, certiorari denied 342 U.S. 947, 72 S.Ct. 555, 96 L.Ed. 704; Sun Theatre Corp. v. R K O Radio Pictures, Inc., 7 Cir., 1954, 213 F.2d 284; Schiffman Bros., Inc., v. Texas Co., 7 Cir., 1952, 196 F.2d 695; Grengs v. Twentieth Century Fox Film Corp., 7 Cir., 1956, 232 F.2d 325, certiorari denied 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 77.

The legislative intent of the Indiana Limitation Statute is expressed in Brown v. Clow, 1902, 158 Ind. 403, 62

3. See Appendix 3, answer.

4. See Appendix, Section 15b.

5. See Appendix, Section 2–602.

N.E. 1006; Standard Liquors v. Narcowich, 1951, 121 Ind.App. 600, 99 N.E.2d 268; United States Reduction Co. v. Nussbaum, 1942, 112 Ind.App. 330, 42 N.E.2d 403; Superior Laundry Co. v. Rose, 1923, 193 Ind. 138, 137 N.E. 761, rehearing denied 139 N.E. 142, 26 A.L.R. 1392. Indiana State Anti-Trust Statute is molded upon 15 U.S.C.A. § 15, (Burns' Indiana Statute Anno. (1933 Ed. 1950 Repl.) Section 23–122) and the recovery provided is "*a penalty* of three-fold the damages which may be sustained, together with the costs of suit, including a reasonable attorney's fee" (italics added), which is also an indication of the Indiana Legislature's understanding of the term statutory penalty. I conclude that the Indiana Courts would regard an action for treble damages and attorney's fees under 15 U.S.C.A. § 15 to be an action for a statutory penalty within the meaning of the two-year limitation statute of Indiana.

■ Did the plaintiff's action accrue more than two years prior to January 7, 1956, the effective date of 15 U.S.C.A. § 15b? If it did so accrue, it was barred by the Indiana statute of limitations. The question of when the cause of action accrued under 15 U.S.C.A. § 15 is federal and the opinions of the Federal Courts point the way. Rawlings v. Ray, 1943, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605; Momand v. Universal Film Exchange, D.C.Mass.1942, 43 F.Supp. 996, affirmed 1 Cir., 1948, 172 F.2d 37, certiorari denied 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118, rehearing denied 337 U.S. 934, 69 S.Ct. 1493, 93 L.Ed. 1740.

■ To ascertain the accrual date of plaintiff's action it is necessary to review the facts of the case to ascertain the date of the commission of the wrongful acts from which time the statute commences to run, irrespective of the date or dates of the occurrence of the damage resulting proximately from the wrongful act. Northern Kentucky Telephone Co. v. Southern Bell Telephone & Telegraph Co., 6 Cir., 1934, 73 F.2d 333, 97 A.L.R. 133; Nalle v. Oyster, 1913,

230 U.S. 165, 33 S.Ct. 1043, 57 L.Ed. 1439; Steiner v. 20th Century-Fox Film Corp., 9 Cir., 1956, 232 F.2d 190; Crummer Co. v. Du Pont, 5 Cir., 1955, 223 F.2d 238; Park-In Theatres v. Paramount-Richards Theatres, D.C.Del.1950, 90 F.Supp. 727, affirmed 3 Cir., 185 F.2d 407, certiorari denied 341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373; Levy v. Paramount Pictures, D.C.N.D.Cal.1952, 104 F.Supp. 787; Burnham Chemical Co. v. Borax Consolidated, 9 Cir., 1948, 170 F.2d 569; Momand v. Universal Film Exchange, 1 Cir., 1948, 172 F.2d 37, certiorari denied 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118, rehearing denied 337 U.S. 934, 69 S.Ct. 1493, 93 L.Ed. 1740.

Briefly stated the facts are:

The plaintiff was the owner of land containing five million tons of limestone suitable for quarrying and sale in interstate commerce. She leased it to Nally, Ballard & Cato, a partnership, later incorporated on November 5, 1945 to remove the stone for a royalty of three cents per ton. A new lease between the same parties was entered into on January 16, 1950 for a royalty of five cents per ton with a provision for a minimum payment of $138.89 per month and for the period from January 16, 1950 to November 1, 1956 with an option to the lessee to renew for an additional period of ten years from November 1, 1956. The said lessee paid plaintiff substantial royalties ranging from $2,000 to $15,000 per year from 1945 through 1952.

The plaintiff contends that defendants long prior to 1951 continuously to the date of the filing of this action on September 26, 1956, violated the said Anti-Trust Laws of the United States and will continue to do so in the future.

In performing said wrongful conduct, the plaintiff contends that the first blows in her direction were made during the years 1951, 1952, and 1953. She contends that the free competition in the trade and commerce of quarrying, crushing and selling stone in Southern Indiana and Southern Illinois and particularly in Lawrence and Monroe Counties, Indiana, which existed up to November

1951 thereafter ceased to exist and has been completely dominated by the defendants. The defendants sought to eliminate Nally, Ballard & Cato, Inc., in order to acquire the power to eliminate plaintiff from competition and her stone from the market. In order to accomplish this, defendants sometime prior to November 1951 purchased land adjoining plaintiff's land on the east and west. The uncontroverted evidence offered in the proceedings is that the land on the east was purchased in August and September 1951, and was not adjoining plaintiff's property; the land on the west was purchased in March of 1952 and adjoined plaintiff's land. The land was purchased on the east and west of her land for the alleged purpose of intimidating plaintiff and her lessee so that they would sell to the defendants at a price determined by them. Defendants thereafter proceeded to construct and develop and complete a quarry on the land west of plaintiff's land. The uncontroverted evidence is that the Mitchell quarry to the west of plaintiff's land was constructed between March 1952 and August 1952. In constructing the quarry, they piled thousands of tons of waste material around plaintiff's quarry in such a way as to change the natural flow of water from plaintiff's land, flood her quarry, make it impossible for her quarry to be operated by any others without causing the water to flow into the quarry of Mitchell Crushed Stone Company, Incorporated and make the operation of her quarry economically unfeasible all of which was done for the purpose of eliminating any possibility of plaintiff selling her land to any other persons engaging in quarrying and crushing stone, or of finding any other persons to produce stone for her under a written agreement or lease or license. In November and December of 1951, defendants approached her through Gayle S. Cato and threatened to acquire by assignment the lease from Nally, Ballard & Cato, Inc., and to close down her quarry unless she reduced her royalty from five cents per ton to two and one-half cents per ton, to convey her land to Ralph J. Rogers or one of his corporations after she had received royalties of $50,000 and thereafter the royalties were to be one cent per ton. She refused such proposition and defendants then acquired the corporate stock of the lessee. The uncontroverted evidence in this proceeding is that stock of lessee corporation was acquired by the Mitchell Crushed Stone Company, Inc., and Newton County Stone Company on December 26, 1951. Plaintiff claims that on November 1, 1952 the defendants destroyed and removed all of the quarry equipment from her quarry, closed it down, flooded it, and posted a sign on her premises bearing the following inscription:

"Notice Truckers. This quarry is closed. Call at new quarry ¼ mile west. Mitchell Crushed Stone Company, Inc."

That since said date the quarry has been closed for defendants' benefit. Plaintiff claims that since January 1, 1953, the defendants have ceased paying her royalties and have only paid the minimum lease payment of $138.89 per month.

The parties stipulated on October 7, 1958 that the plaintiff does not and will not assert any ground for the tolling of the statute of limitation.

The foregoing alleged wrongful acts of the defendants occurred more than two years prior to January 7, 1956, the effective date of 15 U.S.C.A. § 15b and are barred by the Indiana Statute of Limitation.

Therefore, all of the damage that proximately resulted from the alleged wrongful acts occurring during the years 1951, 1952, and 1953 are also barred. The plaintiff alleges these damages to be those set out in paragraphs 25, 33, 36, 38, 41, subparagraphs (a) and (b), and paragraph 42.

The remaining alleged wrongful acts of the defendants, occurring after January 7, 1954, directed toward the plaintiff in furtherance of their alleged Anti-Trust violations were: in paying the monthly minimum lease payments

during the years from January 7, 1954 to the date of the filing of the complaint on September 26, 1956; retaining possession of plaintiff's land during the years from January 7, 1954, to the date of the filing of the complaint on September 26, 1956; and defendants' exercising the lease option on April 23, 1956, to extend it for the term of ten years from November 1, 1956, to November 1, 1966.

These remaining wrongful acts are not barred by the Indiana two-year statute of limitation and can be the basis of the action if such acts in and of themselves produce new and independent damage proximately resulting from these acts and provided, however, that such damages are requested in the second amended complaint. Plaintiff, however, cannot rely upon damages that proximately resulted from the wrongful acts described as occurring prior to January 7, 1954 that could have been recovered in an action on the said prior wrongful acts if filed prior to January 7, 1956, because such wrongs and resulting damage therefrom have been barred. Nalle v. Oyster, 1913, 230 U.S. 165, 33 S.Ct. 1043, 57 L.Ed. 1439; Northern Kentucky Telephone Co. v. Southern Bell Telephone & Telegraph Co., 6 Cir., 1934, 73 F.2d 333, 97 A.L.R. 133, certiorari denied 294 U.S. 719, 55 S.Ct. 546, 79 L.Ed. 1251; Park-In Theatres v. Paramount-Richards Theatres, D.C.Del. 1950, 90 F.Supp. 727, affirmed 3 Cir., 185 F.2d 407, certiorari denied 341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373; Levy v. Paramount Pictures, D.C.N.D.Cal.1952, 104 F.Supp. 787, Burnham Chemical Co. v. Borax Consolidated, 9 Cir., 1948, 170 F.2d 569, certiorari denied 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086, rehearing denied 336 U.S. 955, 69 S.Ct. 878; 93 L.Ed. 1109; Momand v. Universal Film Exchange, 1 Cir., 1948, 172 F.2d 37, certiorari denied 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118, rehearing denied 337 U.S. 934, 69 S.Ct. 1493, 93 L.Ed. 1740.

A review of the damages claimed by the plaintiff will be undertaken by the Court to ascertain whether any alleged damages are the proximate result of the alleged remaining wrongful acts of the defendants that accrued since January 7, 1954 that could not have been recovered by the plaintiff for the prior wrongful acts of the defendants that have been barred.

The allegation of paragraph 41(a) of the second amended complaint claims damages that plaintiff's royalties from her quarry have been diminished from in excess of $15,000 per year to $1,666.68 per year since January 1, 1953 in the sum of $106,197.62. This damage is also claimed in paragraphs 5, 14, 15, 25, 28, 32, and 35 of the second amended complaint which together with the uncontradicted evidence in this proceeding discloses that under her land there were five million tons of limestone suitable for commercial use of crushed stone at a value to her of five cents a ton royalty which would net her yearly approximately $15,000. That during the years 1951 and 1952, the defendants in furtherance of their alleged wrongful acts in violation of the Anti-Trust Laws purchased land on the east and west sides of her land, constructed a quarry and in doing so piled thousands of tons of waste material in such a way as to change the natural flow of water, flooded her quarry, and made it impossible for her quarry to be operated by any other person without causing water to flow into defendants' quarry and make the operating of her quarry economically unfeasible for the purpose of eliminating any possibility of plaintiff finding any other person to produce stone for her under a lease. That the defendants destroyed and removed all of the quarrying equipment from her quarry, flooded, and closed it down in 1952 and since January 1, 1953, has paid the plaintiff only the minimum payment of $138.89 per month. Loss of profits on the five million tons of stone under plaintiff's land was permanently and forever lost to the plaintiff in 1951 and 1952 by the alleged tortious conduct in those years and not merely the loss of profits that would have accrued up to the time of the filing of the action, if one had been filed

prior to January 7, 1956. This is not an action in contract based upon lease but is an action in tort based on 15 U.S.C.A. § 15. With this complete permanent wrong and damage occurring in 1951 and 1952, it could not possibly be the proximate result of the alleged wrongful acts of the defendants since 1954 and once barred cannot be removed by new and continuing wrongs of the defendants.

The allegation of paragraph 41(b) of the second amended complaint claims damages because the fair market value of her land and quarry have been depreciated from $50,000 to $5,000. This damage was also claimed in paragraphs 25 and 33 of the second amended complaint wherein it is charged that the defendants constructed a stone quarry on the land to the west of her land, and the uncontradicted evidence is that this construction took place between March and August 1952, and on or about November 1, 1952, destroyed and removed quarry equipment, closed quarry down, flooded it, and ever since directed business to defendants. These paragraphs describe a permanent destructive damage when the defendants piled thousands of tons of waste material around her quarry, to change the natural flow of water from her land, to flood her quarry without causing the water to flow into defendants' quarry and make the operation of her quarry economically unfeasible. Plaintiff further describes in paragraphs 25 and 38 that this was done for the purpose of eliminating any possibility of the plaintiff cancelling said lease, selling her land to any other person engaged in quarrying and crushing stone, or of finding any other person to produce stone for her under a written agreement or lease or license. This damage is also claimed in paragraph 36 of the second amended complaint wherein it is charged that the defendants by reason of their wrongful acts destroyed the free competition in trade and commerce of quarrying, crushing, and selling stone which had existed up to November, 1951, when it ceased to exist and since which date the trade in commerce and stone business has been under almost the complete domination and control of the defendants. With this complete permanent wrong and damage occurring in 1952, it could not possibly be the proximate result of the alleged wrongful acts of the defendants since 1954 and once barred cannot be renewed by new and continuing wrongs of the defendants.

Paragraph 42 of the second amended complaint is merely in summary of paragraph 41. Paragraph 41 of the second amended complaint is in summary of all other damages set forth in the second amended complaint including paragraphs 25, 33, 36, and 38, and there is no need for extending this opinion as to these paragraphs.

All of plaintiff's claims for damages are based upon wrongful acts of the defendants occurring more than two years prior to January 7, 1956, the effective date of 15 U.S.C.A. § 15b i. e. during the years 1951 and 1952 and which proximately resulted from said wrongful acts and there being no new damage proximately resulting from the continuing wrongful acts since January 7, 1954 to September 26, 1956, when the action was filed, plaintiff's action is barred by the Indiana Statute of Limitation.

The motion for summary judgment is sustained as it has been established that there is no genuine issue as to any material fact that the claim of the plaintiff's accrued more than two years prior to January 7, 1956 and this action was not commenced until September 26, 1956 at which time it was barred by Burns' Indiana Statute Anno. (1933 Ed. 1946 Repl.) Section 2–602.

The primary purpose of the Anti-Trust Laws is to prevent restraints of interstate commerce in the public interest, and to afford protection of the public from the subversive or coercive influences of monopolistic efforts and the right granted to plaintiff as a private suitor to seek reparation is secondary and subordinate in purpose.

Are the facts sufficient to show conspiracy for and/or a monopoly and/or

an unreasonable restraint upon interstate commerce to the prejudice of the public? To do so resort must be made to the "rule of reason" since the statute does not define "restraint of trade". Appalachian Coals v. United States, 288 U.S. 344, 53 S.Ct. 471, 77 L.Ed. 825; Standard Oil Co. (Indiana) v. United States, 283 U.S. 163, 51 S.Ct. 421, 75 L.Ed. 926; Leader v. Apex Hosiery Co., 3 Cir., 108 F.2d 71, affirmed 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044; Eastern States Petroleum Co. v. Asiatic Petroleum Corp., 2 Cir., 103 F.2d 315; Westway Theatre v. Twentieth Century-Fox Film Corp., D.C.Md., 30 F.Supp. 830; 4 Cir., 113 F.2d 932; William Filene's Sons Co. v. Fashion Originators' Guild of America, D.C.Mass., 14 F.Supp. 353; 1 Cir., 90 F.2d 556; Feddersen Motors v. Ward, 10 Cir., 180 F.2d 519; Ruddy Brook Clothes, Inc., v. British & Foreign Marine Insurance Co., 7 Cir., 195 F.2d 86; 344 U.S. 816, 73 S.Ct. 10, 97 L.Ed. 635; Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885.

Whether the conspiracy for and/or the monopoly and/or restraint upon commerce is unreasonable depends on testing the facts to ascertain whether the defendants' conduct had a detrimental effect on the public. William Filene's Sons Co. v. Fashion Originators' Guild of America, D.C.Mass., 14 F.Supp. 353; 1 Cir., 90 F.2d 556; Fosburgh v. California & Hawaiian Sugar Refining Co.; 9 Cir., 291 F. 29; Eastern States Petroleum Co. v. Asiatic Petroleum Corp., 2 Cir., 103 F.2d 315; United States v. Columbia Steel Co., 1948, 334 U.S. 495, 68 S.Ct. 1107, 92 L.Ed. 1533, rehearing denied 334 U.S. 862, 68 S.Ct. 1525, 92 L.Ed. 1781.

The facts must show an actual or a potential detriment to the public from the attempt to create monopoly or the actual monopoly. The facts must also be examined to determine whether the intended monopoly unreasonably restrains interstate commerce; and whether the facts disclosed an extraordinary control attempted and/or consummated of an appreciable part of interstate commerce

was or could be affected by the alleged conduct of the defendants. Times-Picayune Pub. Co. v. United States, 1953, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277; Bigelow v. Calumet & Hecla Min. Co., C.C.W.D.Mich.1908, 167 F. 704; 6 Cir., 1909, 167 F. 721.

In addition to the facts hereinbefore recited the uncontroverted facts are as follows: that prior to the defendants' acquisition of the stock of Nally, Ballard & Cato, Inc., in December of 1951, there were but three stone quarries in the State of Indiana in which any of the defendants had any interest. These were the Springville quarry in northwestern Lawrence County, the quarry of the Newton County Stone Company, Newton County, and the quarry operated by the Bloomington Crushed Stone Company, Inc., in Monroe County. Neither the Springville quarry nor the Bloomington quarry have been engaged in interstate commerce, their operations and sales have been entirely intrastate in a local area within the immediate vicinity of their quarry site. Neither of the quarries nor the Newton County Stone Company, Inc. were ever even in nominal competition with Nally, Ballard & Cato, Inc. At the most, the Springville quarry competition intrastate with the Nally, Ballard & Cato, Inc. quarry never amounted to as much as two per cent.

The defendant, Ralph Rogers & Co., Inc., organized in 1947, has operated the Springville quarry which is located on leased ground since it was opened as a new quarry in 1949. The corporation was a successor to two separate partnerships between Ralph Rogers and Harry L. Berry which had previously operated a quarry ten miles south of Springville. The removal of the plant to Springville was because of a depletion of the stone supply at the prior operation. The Springville quarry is the only one operated by Rogers & Co. in the State of Indiana, and the land leased in connection therewith and necessary to its operation is the only land in the State of Indiana owned or leased by Rogers & Co. usable for quarry purposes or containing com-

mercially acceptable limestone. Prior to 1950, several other quarries were operated temporarily either by Rogers & Co., Inc. or the predecessor partnership, for the purpose of carrying out particular construction contracts. They were located on leased ground or in one instance, ground owned temporarily, and each plant was removed when the particular contract was completed.

Newton County Stone Company, Inc., is not a defendant, but is a corporation in which Rogers is the controlling stockholder, and was also organized to carry on a prior business of a partnership of Rogers and Berry. In 1945, the partnership purchased at public auction the assets of a business previously operated at the same location, in which the defendants had no interest of any character. The corporation has operated the quarry so acquired since 1946. The operation is upon ground partly leased. Newton operates in a market area wholly distinct from defendants' other corporations. It sells some stone in interstate commerce in the Illinois counties immediately adjoining Newton County, but Newton cannot compete and has never competed in the market area in Southern Indiana or Southern Illinois in which Nally, Ballard & Cato, Inc., sold crushed limestone, which is the market plaintiff alleges defendants have conspired to monopolize. It operates no other quarry and neither owns nor leases any land containing commercial limestone except the land necessary for its own operation. In the summer of 1951, Newton caused land to be acquired in Lawrence County, east of plaintiff's land for the purpose of an additional quarry site but that project was abandoned because tests showed that the land was not as usable for the purpose as other land available in the area. Newton was one of the purchasers of the Nally, Ballard & Cato, Inc., stock in December 1951. Prior to the acquisition of the stock of Nally, Ballard & Cato, Inc., defendants not only had never supplied any stone in the southeastern Illinois area but neither owned nor operated any quarry nor any land from which stone could be produced which could have been used for that purpose.

Bloomington Crushed Stone Co., Inc., was organized in 1939, and succeeded a partnership of Rogers and Berry which had operated a prior quarry in Monroe County which had been abondoned because a fire had destroyed the crusher plant. The present operation is located on land most of which is owned by the corporation and a small amount of which is leased.

Bloomington was never engaged in interstate commerce and was never in competition of any character with Nally, Ballard & Cato, Inc. It operates in a separate and distinct local area overlapping a very small portion of the area served by Springville and a tip of the area now served by Mitchell.

None of the defendants has ever owned or had any interest of any kind in stone-producing properties in any part of Illinois except Nally, Ballard & Cato, Inc. which owned a plant at Ullin, Illinois, for one year that was sold by it in 1948.

Except for the quarries presently operated and land upon which the defendants presently operate a business, the defendants do not own or have under lease, option or control any land whatsoever in the State of Indiana suitable for quarry purposes, except approximately 1,500 acres of farm land owned by Ralph Rogers, a few city lots, and two abandoned quarries, one of which is plaintiff's quarry.

There are seven belts of limestone in Southern Indiana in which there exists above the surface or just below the shallow overburdened soil approximately 100,000,000,000 tons of limestone available for quarrying purposes. There are 23,171,200 acres of land in Indiana of which 848,000 acres are limestone land of which acreage 3,012.21 acres are owned or controlled by defendants or a percentage of 0.014 of the acreage and less than 0.3 per cent of the quarriable limestone. There are 64,320 acres of limestone available for quarrying purposes in Lawrence County of which the defendants own or control 509.03 acres

or a percentage of 0.8 per cent. There are 58,880 acres of limestone available for quarrying purposes in Monroe County of which 2,064.02 acres are owned or controlled by the defendants or a percentage of 3.6.

None of the defendants have ever engaged in or had anything to do with the negotiation for sale or lease of any land for quarry purposes except their own.

According to the publication of the Bureau of Mines there are 75 limestone quarry operators in the State of Indiana and 2,336 operators in the United States, all of whom could be potential lessees or purchasers of quarriable land in the State of Indiana.

The cost of equipping a quarry plant with a capacity of 25,000 tons a year with new equipment is approximately $22,735; with a capacity of 100,000 tons per year, $63,210, and which with an additional $18,000 expenditure can be increased to 200,000 tons a year; with a capacity of 400,000 tons per year, $174,170. Financing of such equipment requires no more than 10 per cent to 20 per cent down payment. The Mitchell Crushed Stone Company, Inc., since the purchase of Nally, Ballard & Cato, Inc., serves the interstate relevant market area of 23 counties in Southern Illinois. Since the acquisition they have substantially increased the tonnage shipments into that market. The limestone quarries competing in this relevant interstate market area total 48 with a total capacity in tons per day of 66,815 of which Nally, Ballard & Cato, Inc.'s capacity was 1,500 tons or 2.1 per cent and Mitchell Crushed Stone Company, Inc.'s was 3,300 tons or 5 per cent. Exchangeable products in this relevant market include gravel and crushed limestone and there were 62 gravel plants competing in the relevant market area with a capacity in tons per day of 77,990.[6] Nally, Ballard & Cato, Inc., now known as the Knox County Sand Company, operated a gravel pit in Knox County with a production capacity in tons per day of

1,200 or 1.5 per cent which also served the relevant market area. The total capacity of 48 limestone quarries and 62 sand and gravel plants competing in the relevant market area on a per day basis was 144,805 tons. The total capacity of the Mitchell and Knox quarries to produce crushed stone and gravel was 4,500 tons or a percentage of 3.1 of the total capacity of the plants serving the relevant market area. The total production of defendants' limestone quarries in the State of Indiana was 14 per cent of the total produced in Indiana for the year 1951, 15 per cent for the year 1952, 17 per cent for the year 1953, 12 per cent for the year 1954, and 11 per cent for each of the years 1955, 1956, and 1957. The total production of defendants' stone and gravel in the State of Indiana was 8.1 per cent of the total produced in Indiana for the year 1951, 8.5 per cent for the year 1952, 10.1 per cent for the year 1953, 7.2 per cent for the year 1954, 6.6 per cent for the years 1955 and 1956. The total capacity of defendants' crushed limestone plants in Indiana in tons per day was 12.8 per cent of the total capacity of the 75 quarry producers in Indiana. The total capacity of defendants' gravel in the State of Indiana in tons per day was 3.03 per cent of the total of 99 gravel plants in Indiana. The total capacity of defendants' crushed limestone plants and gravel plants in tons per day in Indiana was 6.8 per cent of the 174 operators of limestone quarries and gravel plants. Since the year 1951, 7 new limestone crushing plants, having no connection with the defendants, have commenced operations in the State of Indiana, with a total capacity of 7,900 tons per day and within the last few weeks a new quarry and limestone crushing plant was established in Lawrence County within a few miles of defendants' Springville quarry.

 Whether the facts violate the Anti-Trust Laws is a pure question of law which this Court must decide either now or on a motion for directed verdict.

---

6. Gravel production figures also represent therein an undetermined production of sand, which is not contended to be an exchangeable product.

Judge Lindley said in Gary Theatre Co. v. Columbia Pictures Corp., 7 Cir., 1941, 120 F.2d 891, 894:

"Whether a conspiracy exists is a question of ultimate fact but whether the facts bring defendants within the prohibition of the statute is a question of law."

There is no per se violation of the Anti-Trust Laws charged in the complaint or shown by the evidence in these proceedings.

The facts in these proceedings disclose that the plaintiff has been damaged in her business and her property but the facts in no respect affect either the consuming public, or competition in the relevant market nor does it tend to do so.

▆▆▆ The facts fail to disclose the factors of price quality, quantity, service, convenience and accessibility, which are some of the essential elements of an unreasonable restraint of trade, or monopoly. William Filene's Sons Co. v. Fashion Originators' Guild of America, 1 Cir., 90 F.2d 556.

### Price

There was no attempted, or an actual, price change of crushed stone in or affecting interstate commerce to the detriment of the public other than the loss of royalty to the plaintiff. There are no facts as to changing prices of crushed stone, before and after the alleged conduct, in the relevant market. There is no threat, attempt, or consummated affect on price to the public injury.

### Quality

There was no attempted or actual, change in quality of crushed stone in or affecting interstate commerce to the detriment of the public. There is no unusual or unique supply of quality stone in plaintiff's quarry as compared with other deposits or of produced crushed stone.

### Quantity

The facts show that the quantity of stone produced by the defendants is but a small per cent in the State of Indiana and in the relevant market area. The quantity of stone produced by plaintiff's quarry was also but a small per cent of the State of Indiana and the relevant market area.

### Public Service, Convenience, and Accessibility

There was no attempted, or actual, change in service or convenience, or accessibility to the production or delivery of crushed stone that affects interstate commerce to the detriment of the public. In fact, there could be no appreciable change in freight rates by rail or truck in that defendants' Mitchell quarry was adjacent to plaintiff's quarry and the entrance thereto one-fourth mile away.

The Anti-Trust Law does not forbid competition but fosters competition. I know of no restriction on the defendants' constructing a quarry adjacent to plaintiff's property to furnish competition to plaintiff on the level of township, county, state or interstate areas. There are no unfair practices from the evidence on defendants' part in causing plaintiff's lessee to sell its lease and corporation to the defendants that could or tended to affect interstate commerce. Nothing in the Anti-Trust Laws forbids the acquisition of the lease or plaintiff's lessee corporation in itself and a complete integration of the quarries unless the public is damaged or might be damaged appreciably in interstate commerce. The mere size of the defendants in itself is not a violation of the Anti-Trust Law without accompanying factors such as have been discussed herein.

Plaintiff filed an affidavit and supplemental affidavit of a university assistant professor of engineering in opposition to the motion for summary judgment. These affidavits do not materially dispute defendants' evidence regarding the total amount of limestone available in Southern Indiana theoretically available for quarrying and crushing. These affidavits establish that this amount is 99,302,280,-000 tons, which corresponds exactly with an affidavit filed by the defendants. Defendants' affidavit sets out that, "billions of tons" of quarriable limestone suitable

for quarrying and crushing are also to be found in other parts of Indiana.

Plaintiff's affidavits do however, make an issue of whether this total estimated tonnage of limestone deposits is available for quarrying on the basis of the physical and economic factors involved in the location of quarrying operations. Plaintiff's affiant in raising the issue, offers no evidence as to the approximate amount of deposits, which considering the practical and economic factors stated, might be estimated as actually available. So far as the evidence now stands, this amount could be somewhere between the extremes of the total estimated limestone deposits amounting to 99,302,280,000 tons and zero tons. It is to be observed that the lower extreme is obviously fallacious for defendants' uncontradicted evidence is that there are 75 producing quarries located within Indiana, proving without doubt that *there is some amount* of limestone practically, and economically available for quarrying and crushing. The issue of fact thus raised by plaintiff's affidavits is: What portion of the total estimated limestone deposits theoretically available for quarrying and crushing is actually, practically, and economically available? Obviously it would be only toward the latter that the alleged conspiracy would direct its effort of monopolization, and not toward the monopolization of unusable deposits.

Rule 56(c) Federal Rules of Civil Procedure, 28 U.S.C.A., upon which defendants' motion is filed, states:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file * * * show that there is no genuine issue as to any *material fact* and that the moving party is entitled to a judgment as a matter of law. * * *" (Italics added.)

Is this a material issue of fact? Does it matter, for the purpose of disposing of this motion for summary judgment, whether or not limestone in lesser amounts than the total estimated deposits is actually available for quarrying? I do not think so.

The inference, of course, which plaintiff intends to suggest by raising this issue of fact, is that if there is an amount of limestone commercially suitable for quarrying, which is somewhat less than the total amount of limestone deposits shown by defendants' affidavits, it would therefore be much less difficult for defendants to exercise a monopoly over the lesser amount than over the greater.

For the purpose of deciding the materiality of this issue of fact, let us assume that 99,302,280,000 tons, or some appreciable part thereof is actually available for quarrying. The uncontradicted evidence is that the defendants owned and controlled only a small part of the land containing these deposits, and with the exception of plaintiff's land, defendants are actively quarrying all of the limestone land which they control or own. Further, of the 75 quarries producing crushed limestone in Indiana, defendants own and operate but three in Southern Indiana, and one in Northern Indiana. This evidence is unquestioned, and it indicates that defendants do not dominate nor monopolize all nor any appreciable quantity of the stone land.

For the purpose of further deciding the materiality of this issue of fact, let us assume the other extreme, that there is *no* limestone available for quarrying except that in properties now actually being quarried in Indiana and the relevant market area, plus that which is contained in plaintiff's land. The uncontradicted evidence shows that there are 75 limestone quarries in operation in the State of Indiana, and that there are 48 limestone quarries competing within the relevant market area considered in this action. Further, that there are 2,336 operators of crushed stone quarries in the United States who potentially at least, could compete for the acquisition of stone land in Southern Indiana. Of this number of operating quarries, defendants own and operate but three in Southern Indiana and one in Northern Indiana. Addition-

ally, gravel, which defendants' uncontradicted evidence shows to be an exchangeable product competing with crushed limestone is shown by defendants' uncontradicted evidence to be supplied to the relevant market area by a total of 62 additional competitive points of supply.

By its very nature, considering the wide dispersion of deposits, the bulk and weight of product, and cost of transportation, the crushed limestone industry and more generally, the aggregate materials industry, is decentralized. The points of manufacture are located as closely as possible to each local market. Plaintiff herself recognizes this in paragraph 39 (a) of her complaint:

"The supply of limestone is not sold in central markets as are potatoes, onions, corn, grain, fruit and berries * * *"

In a situation wherein both the buying market, and points of supply and manufacture of product are decentralized, the difficulty of defendants monopolizing the industry is apparent. In a situation wherein the national industry is comprised of no less than 2,336 producers; the statewide industry is comprised of 75 producers; the relevant market area is supplied with 48 competing producers; and where there are 62 producers of sand and gravel, a competing exchangeable material competing within the relevant market area, the likelihood of the monopolization of the industry by defendants or anyone else becomes remote and unforeseeable and impossible even with the financial structure of the defendants considered.

Plaintiff's second amended complaint alleges tortious acts and resulting grievous losses which might have been the subject of a common-law action, or one prescribed by a state statute. However, her action when exposed by the uncontroverted facts fails under the Anti-Trust Laws of the United States. Her action is grossly overstated. She asserts that there were standard agreements; that defendants were in conspiracy to restrain and monopolize the stone business for years prior to 1952 by acquiring control of *all* stone land; that the stone business was under the almost complete domination of the defendants; that defendants, "controlled *all* lands, leases, markets and sales in said stone." (Italics added.) The uncontradicted evidence discloses these charges to be ridiculous and untrue even without discovery proceedings. The uncertainty and suspicions of plaintiff is depicted by her allegations that certain facts were unknown to her but known to defendants. The uncontradicted evidence does not disclose a prior general conspiracy against the United States, that is prior to 1952, yet plaintiff hinges the tortious acts against her to the prior general conspiracy by the allegations that they were in furtherance of the existing prior conspiracy. She also asserts that her stone was eliminated from the relevant market and the public was injured or could be injured thereby. The uncontradicted evidence is that such did not appreciably affect the public nor did it tend to affect the public.

The two grounds of the motion for summary judgment are that the Statute of Limitations barred plaintiff's claims and that there was no violation of the Anti-Trust Laws. The Court set the hearing for Tuesday, October 7, 1958, which was six days before the jury trial date of October 13, 1958. The trial date having been set in August at the first of three partial days of pre-trial conferences. The plaintiff on Monday, October 6, 1958, moved the Court for continuance of the motion for summary judgment hearing. On this date the plaintiff and defendants entered into a stipulation agreeing to proceed with the hearing on the Statute of Limitation phase of the motion as scheduled for October 7, 1958, and to continue the Anti-Trust phase of the motion for Thursday, October 9, 1958, which the Court approved. No request was made by plaintiff in affidavit form for a continuance to produce additional evidence pursuant to Rule 56(f), Federal Rules of Civil Procedure, prior to the hearing or at any time. Argument was heard by the Court and the Court indicat-

ed its conclusion by questioning counsel. Plaintiff, after argument was concluded, then orally requested permission to produce and file additional affidavits which request the Court denied. No request was made by the plaintiff for a continuance. With the trial date approaching, the Court had already proceeded to draft its opinion on the Statute of Limitation phase of the motion, evidence and argument on this phase having been completed. This portion of the Court's opinion was concluded but not published by the time of the hearing on October 9, 1958. At this hearing on the second phase of the motion, the plaintiff tendered two affidavits and a part of a third affidavit which was objected to by the defendants on the grounds they were directed to the issues of the limitation phase of the motion which was concluded on October 7, 1958. The objection was sustained and the affidavits stricken. The plaintiff made no effort to amend her second amended complaint to change the facts therein which would or could be supported by the tendered affidavits. There must be a termination and a day of reckoning in every proceeding. The preparation of a case must not depend or await upon hearing the arguments, reading the briefs of the opponents and hearing the comments of the Court before plaintiff decides what facts to allege in her complaint and what evidence to support it with. Rule 56(c), Federal Rules of Civil Procedure, provides that the plaintiff may, prior to the day of hearing, serve opposing affidavits.

The plaintiff asserted she was tendering the affidavits in support of the Anti-Trust phase of the motion and not the limitation issue. Such affidavits are unnecessary for the disposition of this Anti-Trust issue as the facts considered by the Court include the claim of plaintiff that approximately 5,000,000 tons of limestone from plaintiff's land was eliminated from commerce by the complete destruction of the plaintiff's land as alleged in the second amended complaint.

The Court subscribes to the comments of defendants' counsel that the uncontro-verted evidence pierces the second amended complaint and discloses that no Anti-Trust claim exists against these defendants.

The motion for summary judgment is sustained as it has been established that there is no genuine issue as to any material fact. The facts show as a matter of law that defendants have in no respect violated the Anti-Trust Laws of the United States and that plaintiff has sustained no injury to her business or property by reason of any acts violative of such laws.

It is ordered that judgment be entered in favor of defendants with costs to be taxed.

### Appendix 1

#### Defendants' Motion for Summary Judgment

Defendants in the above entitled cause move the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure to enter summary judgment in their favor and recover their costs in this action on the ground that the pleadings, depositions and admissions on file, together with the affidavits attached hereto, show that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law.

### Appendix 2

#### Second Amended Complaint

The above named plaintiff complains of the defendants named above and by way of amended complaint, alleges and says:

1. That this action arises under the Anti-Trust Laws of the United States, more particularly under Sections 1, 2 and 7 of the Act of July 2, 1890, generally known as the Sherman Act (26 Stat. 209 as amended by 50 Stat. 693, as amended by 69 Stat. 282) and Sections 4, 7, 12 and 14 of the Act of October 15, 1914, generally known as the Clayton Act (38 Stat. 730 as amended by 64 Stat. 1125, as added 69 Stat. 282), said Acts being set forth in Title 15 of the United States Code (15 U.S.C.A. §§ 1, 2, 15, 18, 22, 24), and other relevant sections of the Anti-

Trust Laws of the United States, as hereinafter more fully appears.

2. The defendants at the times and in the manner hereinafter set forth, acted individually and in conspiracy with each other and with others unlawfully, to restrain and monopolize trade and commerce among the several States in violation of the Sherman Act and Clayton Act, thereby causing injury and damage to the property of the plaintiff.

3. The plaintiff alleges that the residence and business location of each of the above named defendants is as follows:

A. That Ralph J. Rogers is a resident of the City of Bloomington, Monroe County, Indiana, and is President and Director of each of the defendant corporations.

B. That Ralph Rogers & Company, Inc., is a corporation organized and existing under the laws of the State of Delaware, and is engaged in business in Southern Indiana and within the area included in the United States District Court for the Southern District of Indiana.

C. That Knox County Sand Company is a corporation organized and existing under the laws of the State of Kentucky, and is doing business in Southern Indiana within the area of the United States District Court for the Southern District of Indiana.

D. That Mitchell Crushed Stone Co., Inc., is a corporation organized and existing under the laws of Indiana, and is doing business in Southern Indiana within the area of the United States District Court for the Southern District of Indiana.

E. That Ruth Rogers is a resident of the City of Bloomington, Monroe County, Indiana.

F. That Wayne K. Sowers is a resident of the City of Bloomington, Monroe County, Indiana, and Secretary-Treasurer of each of the defendant corporations, and Resident Agent of each.

G. That C. A. Broecker is a resident of the City of Indianapolis, Indiana, and Vice President and Director of Mitchell Crushed Stone Co., Inc., and Knox County Sand Company.

H. That Gus Sieboldt is a resident of the City of Bloomington, Monroe County, Indiana, and a Vice President and Director of Ralph Rogers & Company, Inc.

I. That W. C. Blakely is a resident of the City of Bloomington, Monroe County, Indiana, and is an Assistant Treasurer of Ralph Rogers & Company, Inc.

J. That Gayle S. Cato is a resident of the City of New Albany, Indiana, and was Secretary and Director of Nally, Ballard & Cato, Incorporated, at the times mentioned herein.

K. That each of said corporate defendants can be found, and reside and have agents within said District of Southern Indiana.

L. That Ralph Rogers and Ralph J. Rogers is one and the same person.

4. That the plaintiff is a single adult and the sole owner of the following described real estate located in Lawrence County, Indiana:

The north half of the southeast quarter of section twelve (12), township 3 north, range 2 west, and also the southeast quarter of the southeast quarter of section 12, township 3 north, range 2 west, excepting from the above described real estate a certain tract of land heretofore platted into the town of Georgia, Lawrence County, Indiana, leaving after said exception 116 acres more or less.

Also a part of the northeast quarter of section 12, township 3 north, range 2 west, bounded and described as follows: beginning 28 poles east from the southwest corner of said quarter section, thence north 20 poles and 10 links to the Georgia and Huron Pike Road; thence north 21½ degrees west along said road 25 poles and 13 links to the intersection of said road with the south line of the right of way of the B. & O. Southwestern Railroad; thence easterly along the south line of said

Railroad 103 poles and 9 links; thence south 22 poles and 11 links with the south line of said quarter section; thence west 93 poles and 16 links to the place of beginning, containing 20 acres more or less, excepting therefrom about an acre for cemetery.

Also a part of the southeast quarter of the northeast quarter of section 12, township 3 north, range 2 west bounded and described as follows: beginning at the southeast corner of said quarter thence west 38 rods and 9 links; thence north 22 rods and 11 links to the south line of the B. & O. Southwestern Railway; thence in a southeasterly direction along the south line of said Railroad to the east line of said quarter section; thence south to the place of beginning excepting therefrom that part platted into the town of Georgia containing 3 acres more or less, containing in all above described real estate 138½ acres more or less, also lots 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 24, 25, and 26 all in the town of Georgia, Lawrence County, Indiana; also lots number 19, 20, 27, 28, 29 and 30 in the town of Georgia, Lawrence County, Indiana.

5. That on, in and under said land is a quantity of five million tons of limestone, sandstone, and other types of stone suitable for commercial use in the construction of buildings and the paving of roads throughout the United States.

6. In the crushed limestone industry, the only market available to the owners of land containing limestone, consists of large quarry operators owning equipment for the removal and crushing of limestone.

7. That the initial outlay required for the purchase and construction of stone removal equipment, stone crushing equipment, stone conveyors and trucks is extremely high and the annual upkeep and operating expenses are so great that few persons engage in the business of removing and crushing limestone.

8. That the limestone prior to being crushed is bulky, heavy and incapable of being transported from the land economically for the purpose of being crushed, and the landowner is at the mercy of the crusher.

9. That if the defendant, Ralph J. Rogers, and/or his co-conspirators could eliminate Nally, Ballard & Cato from competition, they would thereby acquire the power to eliminate the plaintiff from competition and her stone from the market for the benefit of said defendants Springville quarry.

10. That the standard agreements between stone crushers and landowners provide a right to the crusher to refrain from removing and crushing stone for any reason at any time, and during such period to pay only a modest minimum stipend for the unexercised privilege of removing and crushing limestone.

11. That in order to acquire the power to terminate the production of plaintiff's stone, the defendants did the following acts as set out hereinafter.

12. That prior to November 5, 1945, the plaintiff's stone on said land was by her made available to any and all buyers engaged in the business of quarrying, producing, crushing and selling stone in commerce among the several States, on a free, open and competitive market.

13. That on November 5, 1945, the plaintiff authorized Nally, Ballard & Cato, a partnership, later incorporated and organized as a corporation under the laws of the State of Kentucky, by an agreement in writing, to remove said stone from said land at a price of 3¢ per ton.

14. That a new written agreement was executed between said parties on January 16, 1950, which provided for 5¢ per ton for stone removed and sold from said land, with a provision for a minimum payment of $138.89 per month; and providing for said privilege of removing stone to extend from January 16, 1950, to November 1, 1956, with the privilege given to Nally, Ballard & Cato, Incorpo-

rated, to renew said agreement for an additional period of 10 years from November 1, 1956.

15. That under said agreement, Nally, Ballard & Cato, Incorporated, removed and sold to various purchasers engaged in commerce among the several States, and especially in Indiana, Illinois, Kentucky and Ohio, the following amounts of stone from said land, for which the following amounts were paid to plaintiff:

| | | | |
|---|---|---|---|
| A. | From April through December, 1946 | 80,755.51 tons | $ 2,428.66 |
| B. | January through December, 1947 | 202,788.12 tons | 6,083.64 |
| C. | January through December, 1948 | 191,147.47 tons | 5,734.42 |
| D. | January through December, 1949 | 197,627.15 tons | 5,914.42 |
| E. | January through December, 1950 | 308,873.63 tons | 15,443.68 |
| F. | January through December, 1951 | 273,306.49 tons | 13,665.32 |
| G. | January through December, 1952 | 270,137.54 tons | 13,506.88 |

16. That on the 14th day of September, 1955, Nally, Ballard & Cato, Incorporated, changed its name to Knox County Sand Company, under which name, Nally, Ballard & Cato, Incorporated, is now doing business in Southern Indiana and other States.

17. That the defendant, Ralph J. Rogers, is engaged in the business of quarrying, crushing and selling limestone and other types of stone in commerce among the several States.

18. That the plaintiff and the defendants as landowners, lessors, licensors and otherwise, are or were at the times mentioned herein, competitors in trade or commerce in stone among the several States.

19. That for many years prior to 1952, the said Ralph J. Rogers has engaged in and directed a plot, plan and conspiracy in restraint of trade and to establish a monopoly of the stone business among the several States, and particularly in Lawrence County, Indiana, and Monroe County, Indiana, by acquiring control of land in which commercial grades of stone were located, by purchase, lease, option, and acquisition by assignment of leases and licenses to quarry stone, from landowners, lessors, lessees, licensors, licensees and option holders, the names of all of said persons not being within the knowledge of this plaintiff at the date of the filing of this complaint, but being within the knowledge of the defendants herein.

20. That among the devices used by the said Ralph J. Rogers in the plot, plan and conspiracy in restraint of trade and to establish and maintain a monopoly in the business of quarrying, crushing and selling stone, and to establish a monopoly for himself in the business of quarrying, crushing and selling stone, was the practice of purchasing lands, leasehold interests, licenses, options and stock in competing corporations, from individuals, partnerships, and corporations engaged in the business of quarrying, crushing and selling stone in Southern Indiana, Southern Illinois, and other States. Also used was the device of setting up, organizing and incorporating dummy corporations and alter ego corporations for the purpose of quarrying, crushing and selling stone, as well as for the purpose of acquiring lands, leases, options, licenses, assets of competing corporations, and corporate stock of competing corporations, so that he and/or his co-defendants could control through ownership of corporate stock, land leases, options, and licenses, the business of quarrying, crushing and selling stone in commerce among the several States, and particularly in Lawrence County and Monroe County, Indiana, all the names of which corporations, grantors, lessors, lessees, licensors, licensees and option holders, are within

the special knowledge of the said Ralph J. Rogers and the said co-defendants, and not within the knowledge of the plaintiff at this time.

21. That prior to November, 1951, the said Ralph J. Rogers had in pursuance of his conspiracy to create a monopoly and restrain trade in the stone business, purchased land adjoining plaintiff on the east, and purchased land adjoining plaintiff on the west for the purpose of intimidating plaintiff and her lessees so that either she, they or both would sell to him at a price determined by him.

22. That at said time there existed in Lawrence County, Indiana, the Springville quarry owned by Ralph Rogers and Company, Inc., and plaintiff's quarry being operated under lease with Nally, Ballard & Cato, Inc.

23. That at the date of filing plaintiff's suit and at the present time, the said Ralph J. Rogers now owns and controls the Mitchell Crushed Stone Company, Knox County Sand Company, formerly Nally, Ballard & Cato, Inc., and the Springville quarry, all in Lawrence County, Indiana, which constitutes 100% of the producing crushed stone quarries in Lawrence County, Indiana, and which quarries produce 100% of the stone crushed and sold in Lawrence County, Indiana.

23a. That in 1952, Ralph Rogers & Co. and Nally, Ballard & Cato, Inc. were the major producers of crushed and broken limestone in Lawrence County, Indiana.

b. That Ralph Rogers & Co., Inc. and the co-defendants were in 1951 and 1952 and are now, the largest producers of crushed limestone in Indiana.

c. That crushed and broken stone constitutes 95 per cent of the stone tonnage in Indiana.

d. Virtually all of the largest crushed stone producing counties in Indiana are in the Southern section of the State, and include Lawrence, Putnam and Crawford Counties.

e. That the total crushed stone production in Indiana and in Lawrence County for 1953, 1954, 1955 and 1956, in short tons, was:

| Year | Indiana | Lawrence County |
|------|---------|-----------------|
| 1953 | 8,461,533 | |
| 1954 | 8,870,470 | 698,757 |
| 1955 | 11,234,740 | 762,942 |
| 1956 | | 631,866 |

f. That on the basis of plaintiff's production from 1947 through 1952, plaintiff's quarry would have produced at least 40 per cent of the total Lawrence County crushed stone production for the years 1953 through 1956.

g. That as a result of the said acts of the defendants, one of the two major producers of crushed stone in Lawrence County, Indiana, has been eliminated from competition and said competitor's crushed stone eliminated from the market, and the plaintiff deprived of a market for her stone, to the injury of the public generally, and the plaintiff as herein alleged.

24. That the Mitchell Crushed Stone Company, Inc., proceeded to prepare, build, construct and move quarrying equipment on to the land adjoining plaintiff's quarry on the west.

25. That in constructing said Mitchell Crushed Stone Quarry, the said Ralph J. Rogers, for the purpose of eliminating any possibility of the plaintiff selling her land to any other person engaged in quarrying and crushing stone or of finding any other persons to produce stone for her under a written agreement or lease or license, piled thousands of tons of waste material around plaintiff's quarry in such a way as to change the natural flow of water from plaintiff's land, and to flood her quarry, and to make it impossible for her quarry to be operated by any others without causing the water to flow into the quarry of Mitchell Crushed Stone Company, Inc., and make the operation of the Sandidge quarry economically unfeasible.

26. That the said Ralph J. Rogers owns or controls stone quarries in numerous other counties and states, such as

Newton County, Indiana, Monroe County, Indiana, Knox County, Indiana, quarries in the State of Ohio and Colorado and Tennessee, and numerous other counties and states unknown to plaintiff but within the knowledge of said defendants, as to number, location and annual production.

27. That the stone crushing and removing equipment at the Mitchell Crushed Stone quarry was transferred there from one of the quarries owned by the defendants in the State of Colorado.

28. That when the defendants acquired the stock of Nally, Ballard & Cato, Inc., and the lease of plaintiff, they thereby eliminated the only other competitor in Lawrence County engaged in the business of producing crushed stone, and said situation exists and said condition has continuously existed from that time.

29. That in November and December, 1951, in furtherance of the aforesaid monopoly and in pursuance of the aforesaid plot, plan and conspiracy in restraint of trade and to establish and maintain a monopoly, the said Ralph J. Rogers approached the plaintiff through one Gayle S. Cato, and threatened to acquire by assignment, the written agreement from Nally, Ballard & Cato, Incorporated, and to close down plaintiff's quarry, unless she reduced her compensation agreement from 5¢ per ton for stone quarried and sold by Nally, Ballard & Cato, Incorporated, to 2½¢ per ton, and agree to convey said land to Ralph J. Rogers or one of his dummy and alter ego corporations after she had received total royalties of $50,-000 from said Ralph Rogers & Company, Inc. at 2½¢ per ton, and to receive 1¢ per ton after the proposed conveyance.

30. That Ralph Rogers & Company, Inc., a Delaware Corporation, Knox County Sand Company, a Kentucky Corporation, Mitchell Crushed Stone Co., Inc., an Indiana Corporation, were and are alter ego and dummy corporations of Ralph J. Rogers, and of each other, and are dominated and controlled by the said Ralph J. Rogers.

31. That the plaintiff refused to accept the aforesaid proposal or offer of the said Ralph J. Rogers, and his co-defendants.

32. That upon her refusal to accept the aforesaid proposal or offer, the said Ralph J. Rogers and his dummy and alter ego corporations, pursuant to the aforesaid plot, plan and conspiracy, in restraint of trade and to monopolize said stone business, did then acquire and purchase the shares of stock and/or the assets of Nally, Ballard & Cato, Incorporated, to substantially lessen competition and create the monopoly, and take over the operation of said quarry and the quarrying, crushing and selling of stone therefrom in commerce among the several States, on a date between January 1, 1952, and December 31, 1953, the exact date being within the knowledge of the defendants and not within the knowledge of the plaintiff at this time.

33. That on or about November 1, 1952, said Ralph J. Rogers did by himself and in conspiracy with the other defendants and in pursuance of the aforesaid plot, plan and conspiracy in restraint of trade and to monopolize, destroy and remove all of the quarrying equipment from said quarry, and close down and flood the same, and post a sign on said premises: "Notice Truckers. This quarry is closed. Call at new quarry ¼ mile west. Mitchell Crushed Stone Co., Inc.", and has ever since kept said quarry closed, for the benefit of the defendants.

34. That on April 23, 1956, said Ralph J. Rogers did by himself and in conspiracy with the other co-defendants and in perpetuation of his aforesaid scheme and conspiracy to restrain trade and to establish and maintain a monopoly in the stone business among the several States, and particularly in Lawrence County and Monroe County, Indiana, notify the plaintiff that the agreement existing between Knox County Sand Company, formerly Nally, Ballard & Cato, Incorporated, and the plaintiff was renewed for a term of 10 years from November 1, 1956.

35. That since January 1, 1953, the plaintiff has received from the aforesaid defendants, the minimum payment pro-

vided for in said agreement of $138.89 per month.

36. As a result of all the acts of Ralph J. Rogers and of the acts of Ralph J. Rogers in combination and conspiracy with the other defendants, the free competition in the trade and commerce of quarrying, crushing and selling stone among the several States, and particularly in Lawrence County and Monroe County, Indiana, which had existed up to the month of November, 1951, ceased to exist, and since then the trade and commerce in said stone business was and is under the almost complete domination and control of Ralph J. Rogers and of Ralph J. Rogers and the other co-defendants.

37. That Ralph J. Rogers and Ralph J. Rogers in conspiracy with the other co-defendants, have used the aforesaid restraint of trade and monopoly to stop the development and production of stone from the plaintiff's land.

38. That for all the said acts of defendants, the plaintiff has been denied the remedy of cancelling her agreement, because since the monopoly controlled all lands, leases, markets and sales in said stone, cancellation would have been futile.

39. That said activities hereinabove recited constitute a monopoly and restraint of trade in interstate and intrastate commerce in stone in Lawrence County, Indiana, and Monroe County, Indiana, and among the several States, in violation of the laws of the United States, especially the Acts of Congress, commonly known as the Sherman Act and the Clayton Act, hereinbefore referred to.

39(a). The supply of limestone is not sold in central markets as are potatoes, onions, corn, grain, fruit and berries, but as a general rule is and can be produced only by the owner of the stone, under contract with crushers and processors, who thereafter sell the stone in interstate commerce.

39(b). By reason of the foregoing acts of the defendant and/or his conspirators, interstate commerce in crushed stone was illegally restrained, competition therein was not only substantially lessened, but was destroyed, the price of limestone in the ground or the royalty therefor when removed by the crusher, was illegally controlled and fixed, and an illegal monopoly was established, all in violation of the Anti-Trust Laws of the United States, to the damage of plaintiff as "herein alleged".

39(c). Two distinct effects resulted from the defendants' conspiracy and acts, one which rendered the royalty paid to owners of limestone in the ground devoid of competitive influence as to amount, the other, to reduce competition in the interstate distribution of crushed limestone.

39(d). By their agreement the combination of stone crushers herein acquired not only a monopoly of the raw material —limestone in the ground—but also and thereby, control of the quantity of crushed limestone manufactured, sold and shipped interstate from the Southern Indiana and Lawrence County producing area.

40. Said agreements, conspiracies, monopolies and restraints of trade and commerce have continued and existed and have been given full force and effect continuously from the respective dates of their inception to the present time, and now continue and exist to the injury and damage of the plaintiff in her business and property, and to the public generally, as herein alleged.

"41. That as a direct result of the illegal acts heretofore set out the plaintiff has been injured in her business and property as follows:

"A. Plaintiff's royalties from said quarry have been diminished from the excess of $15,000.00 per year to $1666.68 per year, whereby she has suffered a loss in royalties of $106,197.62.

"B. In addition thereto, the fair market value of her land and quarry has been depreciated from $50,000.00 to $5,000.

"Whereby plaintiff has been injured $151,197.62 and plaintiff will continue to be injured until defendants' illegal conduct ceases, for which she reserves the right to recover at a future date."

42. That as the result of the injuries set forth in the foregoing paragraph, the plaintiff has been damaged in the sum of $151,197.62.

Wherefore, plaintiff prays judgment against the defendants and against each of them for the sum of $151,197.62 actual damages, and such further damages as are provided by Section 4 of the said Clayton Amendment to the Sherman Anti-Trust Act as printed in 15 U.S.C.A. § 15, together with reasonable attorney's fees and the costs and disbursements of this action, and for all other just and proper relief in the premises.

### Appendix 3

### Answer

Come now the defendants and for answer to the amended complaint:

1. Admit that the amended complaint is filed and this proceeding instituted under Section 4 of the Clayton Act (15 U.S.C. § 15). Deny that they or either of them have violated any section of the Sherman Act or the Clayton Act and further deny every allegation contained in any paragraph of the amended complaint charging or purporting to charge them or either of them with violating any provision of the Anti-Trust Laws of the United States.

2. Deny the allegations of Paragraph 2.

3. Admit the allegations of Paragraph 3 except as follows:

F. The defendant Wayne Sowers is not and was not at the time of the filing of the amended complaint, a resident of the City of Bloomington, Indiana.

G. The defendant Broecker is not and was not at the time of the filing of the amended complaint an officer or director of either defendant Mitchell Crushed Stone Co. Inc., or defendant Knox County Sand Company.

H. The defendant Gus Sieboldt is not and was not at the time of filing the amended complaint a resident of the City of Bloomington, Indiana.

J. The defendant Gayle S. Cato was not an officer or director of Nally, Ballard & Cato, Inc., after the 26th day of December, 1951.

4. Admit the allegations of Paragraph 4.

5. Deny the allegations of Paragraph 5.

6. Deny the allegations of Paragraph 6.

7. Deny the allegations of Paragraph 7.

8. Admit that limestone prior to being crushed is bulky and heavy and that it is more economical to crush it at the quarry site than to transport it to another point for crushing. Deny the allegations of Paragraph 8 except as herein admitted.

9. Deny the allegations of Paragraph 9.

10. Deny the allegations of Paragraph 10.

11. Deny the allegations of Paragraph 11.

12. State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12.

13. Admit the allegations of Paragraph 13.

14. Admit the allegations of Paragraph 14.

15. Admit that Nally, Ballard & Cato, Incorporated, during the periods specified in Paragraph 15 removed and sold stone to various purchasers in the quantities therein alleged and paid the amounts of royalties therein alleged. State that at this time they are without knowledge or information sufficient to form a belief as to the truth of the allegation that such purchasers were engaged in commerce among the several states and especially in Indiana, Illinois, Kentucky and Ohio.

16. Admit the allegations of Paragraph 16.

17. Deny the allegations of Paragraph 17.

18. Deny the allegations of Paragraph 18.

19. Deny the allegations of Paragraph 19.

20. Deny the allegations of Paragraph 20 and further deny that defendants or any of them were at any time engaged in a conspiracy in restraint of trade or to establish or maintain a monopoly in the business of quarrying, crushing or selling stone or that any acts of the defendants at any time were done or performed pursuant to or in furtherance of such a conspiracy.

21. Admit that prior to November 1951 Newton County Stone Company, Inc., of which defendant Ralph J. Rogers owns the majority of the stock, purchased land in Lawrence County east of, but not adjoining plaintiff's land and that in 1952 after the acquisition of the stock of Nally, Ballard & Cato, Inc., hereinafter described, the defendant Mitchell Crushed Stone Co., Inc., purchased land adjoining plaintiff's land on the west. Deny that such purchases or either of them were in pursuance of a conspiracy to create a monopoly or restrain trade in the stone business and further deny that such purchases or either of them were for the purpose of intimidating plaintiff or her lessees with respect to any sale of their respective interests in plaintiff's property or otherwise. Deny the allegations of Paragraph 21 except as admitted herein.

22. Admit that in and prior to November 1951 defendant Ralph J. Rogers & Co. owned a quarry in Lawrence County, Indiana, known as the Springville Quarry and that a quarry located on plaintiff's property was then being operated by Nally, Ballard & Cato, Inc., under a lease. Deny the allegations of Paragraph 22 except as admitted herein.

23. Admit that at the date of filing this action and at the time of the filing of the amended complaint herein defendant Ralph J. Rogers owned the majority of the stock of defendant Ralph J. Rogers & Co., Inc., which owned the Springville Quarry in Lawrence County, Indiana, and the majority of the stock of Mitchell Crushed Stone Company which owned and operated a quarry in Lawrence County, Indiana; and that the stock of defendant Knox County Sand Company formerly Nally, Ballard & Cato, Inc., was at said time jointly owned by Mitchell Crushed Stone Co., Inc., and the aforesaid Newton County Stone Company, Inc. Deny the allegations of Paragraph 23 except as admitted herein.

23a. Admit the allegations of Paragraph 23a.

23b. Deny the allegations of Paragraph 23b.

23c. Admit the allegations of Paragraph 23c.

23d. Admit that Lawrence, Putnam and Crawford Counties are among the largest crushed stone producing counties in the State of Indiana and are located in the southern section of the State. Deny the allegations of Paragraph 23d except as admitted herein.

23e. Deny the allegations of Paragraph 23e and state that according to the publications of the United States Department of the Interior, Bureau of Mines, the total crushed stone produced for the State of Indiana for the years mentioned in plaintiff's complaint was:

| 1953* | 8,749,612 |
| 1954 | 10,556,406 |
| 1955 | 13,407,945 |
| 1956 | 14,054,782 |

(* does not include stone use in cement and lime industry)

According to the records published by the Indiana Geological Survey, the total crushed stone produced in Lawrence County, Indiana, for the years mentioned in plaintiff's complaint was:

| 1954 | 1,202,230 |
| 1955 | 1,288,502 |
| 1956 | 1,167,346 |

23f. Deny the allegations of Paragraph 23f.

23g. Admit that since 1952 the defendant Knox County Sand Company, formerly Nally, Ballard & Cato, Inc., has not quarried any stone from the quarry located in plaintiff's property and that said quarry has not been operated since

1952. Deny the allegations of Paragraph 23g except as specifically admitted herein.

24. Admit that during the year 1952 defendant Mitchell Crushed Stone Co. Inc., constructed a stone quarry on the land purchased by it adjoining plaintiff's property on the west and moved quarrying equipment upon said land.

25. Deny the allegations of Paragraph 25.

26. Admit Ralph J. Rogers is the majority shareholder in certain corporations which own or control stone quarries in numerous counties and states such as Newton County, Indiana, Monroe County, Indiana, Knox County, Indiana, quarries in the States of Ohio and Tennessee. State they are without knowledge or information as to plaintiff's knowledge as to ownership or control of quarries in other counties and states. Deny all other allegations of Paragraph 26.

27. Admit that some of the equipment for crushing and removing stone installed at the quarry constructed by Mitchell Crushed Stone Company was transferred from a quarry in the State of Colorado formerly operated by Mitchell Crushed Stone Company under its former corporate name of Denver Crushed Stone Company.

28. Deny the allegations of Paragraph 28.

29. Deny the allegations of Paragraph 29 and further deny that defendants or any of them were at any time engaged in a conspiracy in restraint of trade or to maintain a monopoly or that any acts of the defendants at any time were done or performed pursuant to or in furtherance of such a conspiracy.

30. Admit that defendant Ralph J. Rogers is the owner of the majority of the stock of Ralph Rogers & Co., Inc., Mitchell Crushed Stone Company and Newton County Stone Company and that the two latter corporations jointly own the stock of defendant Knox County Sand Company, formerly Nally, Ballard & Cato, Inc. Deny the allegations of Paragraph 30 except as admitted herein.

31. Admit that no agreement was at any time entered into with plaintiff with respect to any modification of the lease to Nally, Ballard & Cato, Inc., executed January 16, 1950. Deny the allegations of Paragraph 31 except as admitted herein.

32. Admit that on or about December 26, 1951 defendant Mitchell Crushed Stone Company and the aforesaid Newton County Stone Company jointly acquired all of the stock of Knox County Sand Company, formerly Nally, Ballard & Cato, Inc. Deny the allegations of Paragraph 32 except as admitted herein and further deny that defendants or any of them were at any time engaged in a conspiracy in restraint of trade or to create a monopoly or that such acquisition was pursuant to, or in furtherance of, such a conspiracy.

33. Defendants admit that on or about November 1, 1952 defendant Knox County Sand Company ceased to operate the quarry located on plaintiff's property, removed its quarrying equipment therefrom, posted the notice described in Paragraph 33, and that said quarry has not since been operated. Deny the allegations of Paragraph 33 except as admitted herein.

34. Admit that defendant Knox County Sand Company exercised the renewal option granted in its lease from plaintiff at the time alleged in Paragraph 34. Denies the allegations of Paragraph 34 except as admitted herein.

35. Admit that since January 1, 1953 the defendant Knox County Sand Company as lessee of plaintiff's property has made the payments specified in said lease in the event the quarry in plaintiff's property is not operated. Deny the allegations of Paragraph 35 except as admitted herein.

36. Deny the allegations of Paragraph 36.

37. Deny the allegations of Paragraph 37.

38. Deny the allegations of Paragraph 38.

39. Deny the allegations of Paragraph 39.

39a. Admit that limestone is not sold in central markets as are fruits and vegetables and that limestone is sometimes produced by crushers and processors under contracts with owners of stone lands and thereafter sold in interstate commerce. Deny the allegations of Paragraph 39a except as admitted herein.

39b. Deny the allegations of Paragraph 39b.

39c. Deny the allegations of Paragraph 39c.

39d. Deny the allegations of Paragraph 39d.

40. Deny the allegations of Paragraph 40.

41. Deny the allegations of Paragraph 41.

42. Deny the allegations of Paragraph 42.

### Second Defense

For a further and second defense defendants state that the claim for relief alleged in the amended complaint accrued more than two years prior to January 7, 1956 and is therefore barred.

Wherefore, defendants pray that this action be dismissed with prejudice and for all other proper relief.

### Appendix 4

### Section 15(b)

"§ 15b. Limitation of actions;

"Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section and sections 15a and 16 of this title shall be revived by said sections. Oct. 15, 1914, c. 323, § 4B, as added July 7, 1955, c. 283, § 1, 69 Stat. 283."

### Appendix 5

### Section 2–602

Burns' Indiana Statutes Annotated (1933 ed., 1946 repl.) § 2–602:

"The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards.

"First. For injuries to person or character, for injuries to personal property, and for a forfeiture of penalty given by statute, within two (2) years: Provided, That actions on account of injuries to personal property which occurred prior to the effective date of this amendatory act (March 7, 1951) shall be commenced within two (2) years from the effective date of this amendatory act.

"Second. * * *

"Third. * * *

"Fourth. * * *

"Fifth. * * *

"Sixth. * * *

"(Acts 1881 (Spec.Sess.), ch. 38, § 38, p. 240; 1951, ch. 301, § 2, p. 999.)"