**RUDDY BROOK CLOTHES, Inc. v. BRITISH & FOREIGN MARINE INS. CO., Limited, et al.**

**No. 10464.**

United States Court of Appeals
Seventh Circuit.

March 13, 1952.

Henry H. Koven, Howard R. Koven and Charles N. Salzman, all of Chicago, Ill., for appellant.

Leo F. Tierney, Charles L. Stewart, Jr., and Haskel L. Hoffenberg, all of Chicago, Ill. (Mayer, Meyer, Austrian & Platt, Chicago, Ill., of counsel), for appellees.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This is an appeal from an order of the District Court, entered June 19, 1951, allowing defendants' motion to dismiss the complaint for failure to state a claim entitling plaintiff to relief. The complaint sought injunctive relief under § 16 of the commonly denominated Clayton Act, Title 15 U.S.C.A. § 26, for violation by defendants of § 1 of the Sherman Act, Title 15 U. S.C.A. § 1.

As alleged in the complaint, plaintiff is an Illinois corporation located at 622–24 West Roosevelt Road, Chicago, Illinois, where it engages in the manufacture and jobbing of men's suits and coats. Seventeen insurance companies are named as defendants, all engaged in interstate trade and commerce in insurance, and also named as defendant is the National Board of Fire Underwriters, a service organization for all stock fire insurance companies which maintain and support it, whose operations are conducted on an interstate level.

On February 13, 1947, a fire occurred on the premises of the plaintiff. After investigation by the adjustors for the defendant insurance companies and the fire authorities of the City of Chicago, the fire loss which was occasioned by the said fire was settled for approximately $100,000, which amount was paid to the plaintiff. Subsequent to the fire the defendant National Board of Fire Underwriters, by its agents, conducted an investigation of said fire and made a report, dated May 6, 1947, which was circulated among its member companies, which included the defendant insurance companies.[1] As a result of this report, the defendant insurance companies, with whom the plaintiff had been insured, agreed to and did cancel the policies they had respectively issued insuring plaintiff's premises. Since the concerted cancellation of fire insurance by the defendant insurance companies, plaintiff has repeatedly attempted to obtain adequate fire insurance to protect its inventory and business but has not been able to do so by reason of the concerted failure to deal with the plaintiff by the defendant insurance companies and by reason of the boycott and blacklisting of the plaintiff because of the circulation of the report of May 6. The complaint alleges that the aforesaid conduct on the part of the defendants, and each of them, has the effect of lessening competition in the

---

1. The complaint alleges that this report contained false and misleading statements, derogatory and prejudicial to the plaintiff.

sale of fire insurance, because although there may well be fire insurance companies who desire the business of the plaintiff, they will not seek plaintiff's business by reason of the circulation of the aforementioned report and agreement not to deal with the plaintiff; that as a result of all of the foregoing, the plaintiff has been deprived of the opportunity to purchase fire insurance in a free market and consequently has had to assume risks which it would otherwise not have had to assume, and furthermore has had to reduce its business operation from what may be considered normal, in order to minimize any possible loss by reason of a fire.

The complaint further alleges that plaintiff's inventory was fluctuating, with a valuation in excess of $150,000, but that because of the concerted activities of the defendants it was able to obtain insurance only in the sum of $95,000. (This insurance was obtained from companies other than the defendants, some of whom were members of the defendant National Board of Fire Underwriters.) Attached to the complaint is a copy of the report of the fire of February 13, 1947, which also discloses that plaintiff had a previous fire on May 16, 1937. The origin of both fires was undetermined. We think it not important to set forth the contents of this report. It is sufficient to note that the circumstances of the fire of February 13, 1947, as contained in the report, were such as to cause the defendants to decide that plaintiff was an undesirable insurance risk even though some of the allegations contained in the report are alleged to be untrue.

The primary issue, of course, is whether defendants violated § 1 of the Sherman Act by their concerted refusal to sell plaintiff fire insurance under the circumstances alleged. Plaintiff's argument, as we understand it, is that a combined refusal to deal constitutes under all circumstances a prohibited restraint, that public injury inevitably follows and that the amount of commerce affected is immaterial. Defendants' argument is to the effect that injury to the public is necessary to make a restraint of trade unreasonable within the prohibitions of the Act and that in the absence of an allegation of injurious effects upon the public no violation is stated; that the complaint is deficient for failure to allege any restraint of trade which had any effect upon free competition in the market, and, in any event, that no appreciable effect upon any amount of commerce is alleged.

The parties in their citation and discussion of cases come near to running the entire gamut of anti-trust cases. No good purpose could be served in an extensive review or discussion of such cases. We have spent considerable time, with the result not as satisfactory as we would like, in attempting to ascertain the line of demarcation, if there is one, between trade agreements which come within the ban of the Sherman Act and those which do not. Plaintiff appears to recognize that no court has gone so far as to condemn the character of restraint which is shown. Referring thereto, plaintiff in its brief states, "Whether or not it is the kind of restraint, like price-fixing, which permits of no justification has not been specifically declared by the Court." It argues, however, "If an agreement is found to be of the kind described, we submit that, as in the case of price-fixing agreements, the law forecloses justification upon the basis of judicial appraisal of the good and evil consequences of the combination." At another point, plaintiff states, "Ever since Standard Oil Co. v. United States, 221 U. S. 1 [31 S.Ct. 502, 55 L.Ed. 619], was decided in 1911, the statute has been interpreted as prohibiting conduct which restrains trade only when the restraint is 'unreasonable.' Once an agreement is shown to restrain interstate commerce, legality is determined by whether the restraint imposed is reasonable under all the circumstances, except in those cases where the character of the restraint is such that it is regarded as unreasonable *per se.*"

Accepting this as a fair statement, as we think it is, it follows that the test of whether a restraint is illegal depends upon whether it is reasonable or unreasonable. As the court stated in Eastern States Lumber Dealers' Ass'n v. United States, 234 U. S. 600, 609, 34 S.Ct. 951, 953, 58 L.Ed. 1490: " * * * the act was not intended

to reach normal and usual contracts incident to lawful purposes and intended to further legitimate trade * * *." In Paramount Famous Lasky Corp. et al. v. United States, 282 U.S. 30, 43, 51 S.Ct. 42, 45, 75 L.Ed. 145, the court, after pointing out that the arrangement there existing between the parties could not be classified among "those normal and usual agreements in aid of trade and commerce" spoken of in the Eastern States Lumber Dealers' Ass'n case, stated: "The Sherman Anti-Trust Act seeks to protect the public against evils commonly incident to the unreasonable destruction of competitions, and no length of discussion or experimentation amongst parties to a combination which produces the inhibited result can give validity to their action. Congress has so legislated 'as to prevent resort to practices which unduly restrain competition or unduly obstruct the free flow of such commerce, and private choice of means must yield to the nation authority thus exerted.'" (Again citing the Eastern States Lumber Dealers' Ass'n case.) And in Associated Press et al. v. United States, 326 U.S. 1, 19, 65 S.Ct. 1416, 1424, 89 L.Ed. 2013, the court stated: "Therefore this contractual restrain of interstate trade, 'designed in the interest of preventing competition,' cannot be one of the 'normal and usual agreements in aid of trade and commerce which may be found not to be within the [Sherman] act * * *.'" (Citing the Eastern States Lumber Dealers' Ass'n case.)

It appears settled that the amount of commerce affected is immaterial. As was stated in United States v. Yellow Cab Co., et al., 332 U.S. 218, 225, 67 S.Ct. 1560, 1564, 91 L.Ed. 2010: "But the amount of interstate trade thus affected by the conspiracy is immaterial in determining whether a violation of the Sherman Act has been charged in the complaint. Section 1 of the Act outlaws unreasonable restraints on interstate commerce, regardless of the amount of the commerce affected." And the court on the following page stated: "Likewise irrelevant is the importance of the interstate commerce affected in relation to the entire amount of that type of commerce in the United States. The Sherman Act is concerned with more than the large, nation-wide obstacles in the channels of interstate trade. It is designed to sweep away all appreciable obstructions so that the statutory policy of free trade might be effectively achieved."

Plaintiff in its brief states, "The mere listing of the defendants indicates that they sell an amount of insurance to satisfy the so-called 'appreciable' test as set forth in the Yellow Cab case." Plaintiff's observation, in our view, is a misapprehension of the court's reasoning. The so-called "appreciable" test has reference to the obstruction or obstacle imposed on commerce and not the amount of such commerce, as plaintiff appears to think.

The complaint alleges that the defendants have by their agreement lessened competition in the sale of fire insurance, that the free flow of trade in interstate commerce has been seriously restrained and, directly in the language of the statute, that their agreement is "in restraint of trade." There is no allegation that any unreasonable restraint has been imposed, that the public has been damaged or injured, or as to how competition has been affected or the free flow of commerce impaired other than by a refusal to sell fire insurance to the plaintiff. If plaintiff's theory is accepted, it must be because all agreements restrictive of trade are illegal and would inevitably lead to the result that concerted refusal to sell fire insurance to a known fire-bug or concerted refusal to sell fire arms to a known or suspected bank robber would constitute a violation of the Sherman Act. But we know that no such ludicrous result was intended or could be countenanced, and we also know that there are many agreements which from their very nature are restrictive in one form or another which do not violate the anti-trust act. The authorities which we have cited and quoted from so recognize. The test always is whether the restraint is unreasonable. If it is a restraint induced by a price-fixing agreement, it is unreasonable per se; otherwise, so far as we are aware, its character must be properly alleged in order to state a cause of action.

We have doubt that the refusal by defendants to insure the property of a single individual located at a definite point in the City of Chicago, under the circumstances alleged, bears any relation to interstate commerce, but, assuming that it does, the effect thereon would be infinitesimal and certainly would not constitute an "appreciable" obstruction to its free flow. There was no competition between plaintiff and the defendants in the commodity in which the latter dealt nor was there any such competition between the plaintiff and any other party, for the simple reason that plaintiff was not in the insurance business. The sole competition which could possibly have been affected was that which existed between the defendants and that only to the extent that they restricted themselves in the selling of insurance to plaintiff because it was regarded as a poor risk. The effect upon competition, like that upon the flow of commerce, was "de minimis;" it could have had no "appreciable" effect upon either. The restraint asserted was as impotent in its relation to either commerce or competition as a lighted match to the temperature of all outdoors.

Moreover, as bearing upon the character of the restraint, we think defendants were charged with an obligation to their myriad policyholders to exercise at least reasonable care in the selection of risks which they would assume. We think this because the cost of insurance bears a direct relation to the losses which an insurer is required to pay, which in turn are dependent upon the soundness of its risks.

It is unquestioned but that any defendant acting individually could have refused the sale of insurance to the plaintiff. The fact that they did so concertedly does not, in our judgment, bring the defendants within the ban of the Sherman Act, and any restraint which they imposed upon either the flow of commerce or competition is so trifling that it cannot be categorized as unreasonable.

The District Court dismissed the complaint, largely, it appears, because of a failure to allege that the public has been or may be affected by defendants' activities. Defendants by their argument here support this premise for dismissal and cite authorities which are asserted to support it. However, in view of what we have said, we think it unnecessary to discuss or decide whether the complaint is deficient in this respect.

The order appealed from is affirmed.