**ROOFIRE ALARM COMPANY**

v.

**ROYAL INDEMNITY COMPANY.**

No. 3524.

United States District Court
E. D. Tennessee, S. D.

Feb. 8, 1962.

Chambliss, Chambliss & Hodge, Chattanooga, Tenn., for plaintiff.

Miller, Martin, Hitching & Tipton, Chattanooga, Tenn., for defendant.

WILSON, District Judge.

This is an anti-trust suit wherein the plaintiff seeks a declaratory judgment and an injunction against the defendant for allegedly acting in concert with Underwriters Laboratories, Inc., in restraint of trade. It is alleged that the plaintiff is licensed to market a fire alarm device, which is described as a small detonating device for which many advantages are claimed, including low cost and lack of maintenance. It is further alleged however that the marketability of the device has been adversely affected by Underwriters Laboratories, Inc., declining to test the device or publish the results of such test. It is alleged that the defendant, Royal Indemnity Company, acted in concert with Underwriters Laboratories, Inc., in this regard. It is alleged that this concert of action was accomplished both directly and through the National Board of Fire Underwriters and the National Fire Protection Association, both being associations involved in fire prevention and related activities in which the defendant is a member. It is contended that there is an interlocking of officers and directors between the defendant and all of the above organizations which has resulted in this case in an illegal concert in restraint of trade. The suit is based upon the alleged violation by the defendant of Sections 1 and 3 of the Sherman Act, 15 U.S.C.A. §§ 1, 3.

By answer, the defendant avers that it is a fire and casualty insurance company and admits that it is a member of the National Board of Fire Underwriters, which organization in turn sponsors Underwriters Laboratories, Inc., and admits that its president, Clarke Smith, is also an officer in Underwriters Laboratories, Inc. It admits that it works with Underwriters Laboratories, Inc., and with the National Board of Fire Underwriters (NBFU) and the National Fire Protection Association (NFPA) to promote fire prevention measures and fire safety practices, but denies that there is any concert of action between itself and the other organizations in restraint of trade. The defendant denies knowledge of the refusal of Underwriters Laboratories, Inc., to test the plaintiff's device or to publish the results of such test, and denies that it has ever recommended against use of any fire alarm device not listed as approved by Underwriters Laboratories, Inc.

Since the filing of the complaint and the answer numerous admissions have been requested and filed, various affidavits have been filed, many exhibits have been filed and several depositions have been taken, including the deposition of John A. Chambliss, the sole stockholder of the plaintiff corporation and the inventor of the fire alarm device involved in this suit.

A motion for summary judgment was therefore filed by the defendant and overruled by the Court. Since the action upon that motion, many additional matters have been set forth in the record, including an additional affidavit of Clarke Smith, President of the defendant corporation, and including the discovery deposition of Mr. Chambliss and others.

From all of these it now satisfactorily appears to the Court that there is no genuine issue as to any material fact and that the defendant's motion for summary judgment should be sustained.

From the record it appears undisputed that the plaintiff is a one man corporation set up by John A. Chambliss, the inventor of the fire alarm device. As shown by his deposition, he is the only stock subscriber having subscribed for the minimum capital for beginning business of $1000. He is the secretary-treasurer of the corporation and two of his relatives hold the only other corporate offices.

It likewise appears undisputed in the record that the defendant, Royal Indemnity Company, is engaged in the fire and casualty insurance business. Its president, Clarke Smith, is also chairman of the Executive Committee of the National Board of Fire Underwriters and chairman of the Board of Trustees of Underwriters Laboratories, Inc. The National Board of Fire Underwriters, of

which the defendant is a member, is an association of approximately 200 fire insurance companies. Its general purpose is to promote fire safety and sound fire underwriting practices. The National Fire Protection Association, of which the defendant is also a member, is a voluntary association made up of approximately 17,000 members from many fields, apparently including almost any organization interested in fire prevention, fire fighting, fire safety and related activities. In fact, Mr. Chambliss himself is a member of this Association. Underwriters Laboratories, Inc., is a testing laboratory, sponsored by National Board of Fire Underwriters, engaged in the testing of materials, products and devices from a fire, casualty and crime prevention standpoint. It is supported by charges made for testing services but receives no payment from the sale of any product listed by it and does not recommend the purchase of any individual product to the buying public. Neither the defendant, Royal Indemnity Company, the National Board of Fire Underwriters, the National Fire Protection Association nor Underwriters Laboratories, Inc., engages in any manufacturing business, nor do they endorse or recommend any particular fire alarm device, nor do they receive any commission or royalties from the sale of such devices. In short, neither the defendant nor any of the organizations with which it is alleged to have been acting in combination is in any way in competition with the plaintiff. Neither is it claimed that they have attempted to fix or control prices in this field in any way, nor is it claimed that there has been any attempt by the defendant or the combination of which it is alleged to be a part to suppress competition between the plaintiff and the producers of any similar fire alarms. The defendant's intentions in this regard are admitted to be proper and no intent to violate the law is charged to the defendant.

The basic complaint of the plaintiff appears to be that Underwriters Laboratories, Inc., has declined to test or list the plaintiff's fire alarm device, that the defendant, in combination with the National Board of Fire Underwriters and the National Fire Protection Association control and dominate the policies of Underwriters Laboratories and that the influence of this combination is such that upon the failure and refusal of Underwriters Laboratories to test or list the plaintiff's device plaintiff has been unable to advertise in some media and the marketability of its product has been greatly curtailed.

It appears that Underwriters Laboratories has established certain standards which any product submitted to it must meet before it will be tested or listed in its publications as approved. Among other standards set, it requires that any fire alarm device give a warning over a minimum period of three minutes and meet certain temperature requirements. The plaintiff's explosive device did not meet these standards and was therefore not eligible for testing or listing.

By a former suit the plaintiff sought to compel Underwriters Laboratories to test its device. In the case of Roofire Alarm Co. v. Underwriters Laboratories, Inc., (1959) D.C., 188 F.Supp. 753, affirmed (C.C.A. 6, 1960) 284 F.2d 360, this Court has held that Underwriters Laboratories, Inc., did not act unreasonably in setting standards for fire alarm devices, including a requirement that the alarm continue for at least three minutes, as a prerequisite for its testing or approval of the device, and Underwriters Laboratories, Inc., could not be required to test or approve devices which did not meet their minimum standards.

It is apparent from the record that Underwriters Laboratories has a high degree of acceptability in the field of testing fire equipment. Its testing and approval appears to have gained for it national recognition and acceptance. However it does not appear from the record that it has any exclusive or monopoly rights in the testing field. Its acceptance appears to be on the basis of competence rather than on the basis of any illegal combination or restraint in the

field. The imposition of standards which it considers reasonable as a condition to its testing and approval is doubtless a major factor in the acquiring of the national reputation which it appears to have. Other testing facilities are shown to exist under the proof. In any event, Underwriters Laboratories is not a party to this suit.

Moreover, it appears from the deposition of Mr. Chambliss that he individually submitted a somewhat similar device to Underwriters Laboratories several years ago, which it declined to test for the reasons stated above. This was before the organization of the plaintiff corporation. A modified or improved version of the device has been developed in recent years. Although the plaintiff corporation has no express license to manufacture or market the device since its incorporation upon February 3, 1958 from Mr. Chambliss, the inventor and holder of the patent, he considers that it has a license "in fact". In any event, the modified device has never been submitted to Underwriters Laboratories for testing and neither the plaintiff nor Mr. Chambliss has submitted any device for testing since the organization of the plaintiff corporation. In fact, the plaintiff has no place of business other than Mr. Chambliss' office, no banking or other accounts, engages in no manufacturing, distributing or sales than the minor and incidental sales made by Mr. Chambliss.

It is essential to a Sherman Act violation, not just that there be a combination or conspiracy, but that interstate commerce be illegally restrained as a result thereof. There must be an illegal restraint of interstate commerce producing a direct and substantial restraint of interstate commerce. Ruddy Brook Clothes, Inc. v. British & Foreign Marine Ins. Co., (C.A. 7, 1952) 195 F.2d 86, cert. denied 344 U.S. 816, 73 S.Ct. 10, 97 L.Ed. 635; Spears Free Clinic, etc. v. Cleere, (C.A. 10, 1952) 197 F.2d 125.

The action of Underwriters Laboratories, Inc., appears to be for lawful and proper purposes. Even if the defendant participates with or through others in the setting of the standards adopted by Underwriters Laboratories, Inc., there is nothing to indicate that this has accomplished any unlawful or improper purpose. Rather, the defendant's connection with Underwriters Laboratories, Inc., and with other related organizations likewise appears to be for lawful and proper purposes. The plaintiff makes no charge of "per se" violations such as price fixing, suppression of competition, etc. The Sherman Act is not intended to reach normal and usual contracts or combination which are incidental to lawful purposes and are intended to further legitimate trade. Eastern States Retail Lumber Dealers Association v. United States, 234 U.S. 600, 34 S.Ct. 951, 58 L.Ed. 1490. Nor is it intended to inhibit the intelligent conducting of business operations. 36 Am.Jur., Monopolies, Sec. 147. An association formed to foster high standards, to mitigate evils in trade existing through lack of knowledge or information, and to encourage fair competitive opportunities is not to be condemned as an undue restraint of interstate commerce in violation of the Sherman Act merely because it may effect a change in market conditions. 36 Am.Jur., Monopolies, Sec. 148. The Act sets such standards of reasonableness, and a restraint is not unlawful unless it is unreasonable. Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619. In this regard the rule is stated in 36 Am.Jur., Monopolies, Sec. 1539, as follows:

"It is held that the statute does not forbid or restrain the power to make normal and usual contracts to further trade by resorting to all normal methods, whether by agreement or otherwise, to accomplish such purpose, but prohibits only acts or contracts or agreements or combinations which operate to the prejudice of the public interests by unduly restricting competition, or unduly obstructing the due course of trade, or which, either because of

their inherent nature or effect or because of the evident purpose of the acts etc., injuriously restrain trade."

The plaintiff's real purpose, as stated by Mr. Chambliss, is to require Underwriters Laboratories, Inc., to list his device in its publications, even though it is listed as disapproved. Having previously been denied this relief in the case of Roofire Alarm Co. v. Underwriters Laboratories, Inc., supra, it cannot be granted this relief in a suit against Royal Indemnity Company. No material fact remains in issue and since the plaintiff would not be entitled to relief under the Sherman Act for the reasons stated above, the motion for summary judgment will be granted.

An order will enter accordingly.