## Application of AMERICAN SOCIETY FOR TESTING AND MATERIALS.

### Misc. No. 2699.

United States District Court
E. D. Pennsylvania.
July 20, 1964.

Morris R. Brooke, Philadelphia, Pa., for applicant.

Rodney O. Thorson, Dept. of Justice, Washington, D. C., for the government.

VAN DUSEN, District Judge.

This application arises on the following facts: On June 1, 1962, the Government secured an Indictment (Document 1 in Criminal No. 21118) charging the Johns-Manville Corporation, the Keasbey and Mattison Company, and five of their employees with violations of the anti-trust laws (15 U.S.C. §§ 1 and 2). The terms of the Indictment are summarized

in United States v. Johns-Manville Corporation, 213 F.Supp. 65 (E.D.Pa.1962). As to three of the employees, separate trials were granted and may be held at some future date. All of the other defendants were tried and acquitted. The trial lasted 78 days, starting January 9 and ending May 21, 1964.

Paragraph 7(b) of the Indictment reads as follows:

"7. Various corporations and individuals not made defendants herein have participated as co-conspirators in the offense charged herein, and have performed acts and made statements in furtherance thereof. These co-conspirators, some of them being unknown to the grand jurors, include, but are not limited to, the following:

\*  \*  \*  \*  \*  \*

"(b) American Society for Testing Materials, Inc., a Pennsylvania corporation with headquarters at Philadelphia, Pennsylvania. It is composed of members drawn, among others, from many of the more important industries of the United States. One of its purposes is the standardization of specifications and methods of testing various materials, including asbestos-cement pipe and couplings."

Paragraph 15(f) of the Indictment reads as follows:

"15. For the purpose of effectuating the aforesaid combination and conspiracy, the defendants and co-conspirators did those things which they combined and conspired to do, including, among other things, the following:

\*  \*  \*  \*  \*  \*

"(f) Agreed upon and proposed, and brought about or attempted to bring about, the adoption by the American Society for Testing Materials, the American Water Works Association, other organizations, municipalities and awarding author-

ities, of specifications designed to increase the costs of foreign-made asbestos-cement pipe and couplings, to render such products ineligible for use, and to otherwise restrict and eliminate competition from such foreign-made products;"

The American Society for Testing and Materials (hereinafter referred to as "ASTM") has taken the following steps:

(1) Approximately ten days before the scheduled start of the trial (January 6), ASTM filed, on December 27, 1963, a motion to submit a statement, which was attached to the motion (Document 152 in Criminal No. 21118), setting forth the nature and purpose of its operation and the predicament in which it was placed by being named in the Indictment without being made a defendant. The motion and statement were made a part of the Clerk's file in Criminal No. 21118.

(2) Shortly before, or at the time that, the Government concluded the presentation of its evidence in April 1964, ASTM moved to strike paragraphs 7(b) and 15 (f) of the Indictment and filed a brief (Document 308 in Criminal No. 21118) in support of this motion. In the comment to the ruling on the motions made at that time (see Order of 4/16/64, being Document 195 in Criminal No. 21118), the following paragraph was included at page 6:

"The Government has not established that the American Society for Testing and Materials and the American Waterworks Association are co-conspirators or that they had knowledge of the conspiracy. Hence, the jury will be instructed to disregard § 7(b) and (c) of the Indictment (Document 1), which shall be considered as having been deleted therefrom."

(3) On April 14, 1964, ASTM filed the instant application in a separate suit on the Miscellaneous Docket. This application asks that paragraph 15(f) of the Indictment be expunged [1] and for

---

1. Insofar as the Application includes a request for "the relief set forth in [the]

Motion and Statement" filed 12/27/63 in Criminal No. 21118 (Document 152),

appropriate findings of fact and conclusions of law "that neither the Society nor its specifications were in any way part of the violation of the anti-trust laws charged in paragraph 15(f)." (See paragraph 4 of Document 1.)

(4) When counsel at the trial were submitting their points for charge, ASTM requested that the jury be instructed to ignore those parts of the Indictment that mentioned it because there was no evidence in the record to justify them. The instructions to the jury (N.T. 14,374–14,378 in Criminal No. 21118) covered the Government's allegations of the part played by ASTM in the conspiracy charged in the Indictment and the following points for charge, submitted by defendants, were read to the jury (N.T. 14,376–14,377):

" 'I instruct you that the activities of the defendants in agreeing upon and proposing, and attempting to bring about the adoption of specifications concerning the alkalinity test and uncombined calcium hydroxide test by the American Society for Testing Materials and the American Water Works Association were entirely legal and permissible and cannot, as a matter of law, on this record be considered a violation of the antitrust laws.

" 'I instruct you to disregard that portion of Paragraph 15(f) of the indictment which alleges that the defendants "brought about or attempted to bring about, the adoption by the American Society for Testing Materials, the American Water Works Association, other organizations, municipalities and awarding authorities, of specifications designed to increase the costs of foreign-made asbestos-cement pipe and couplings, to render such products ineligible for use, and to otherwise restrict and eliminate competition from such foreign-made products" insofar as the alkalinity test and the uncombined calcium hydroxide test are concerned.

" 'The Government has failed to prove, as I have said before, that the American Society for Testing Materials and the American Water Works Association were co-conspirators as alleged in Paragraph 7(b) and (c) of the indictment, and there is no evidence from which you could find that there was an unlawful conspiracy between the defendants and these two organizations to do the acts charged.' "

After the trial and acquittal of four of the seven defendants, the instant application came on for hearing on June 16, 1964. Government counsel appeared, stated its position that the court lacked jurisdiction over the subject matter of the application, and declined to participate further in the hearing. Counsel for ASTM then called four witnesses, offered certain portions of the testimony in the criminal action, offered 121 exhibits, and submitted proposed findings and conclusions.

ASTM is a non-profit, charitable organization. It writes standards by which building materials and similar matters may be judged. These standards are adopted and relied upon, often without any independent investigation, by those who want to buy materials suited to their purposes. Among those who so rely are municipalities, state governments, and departments of the Federal Government. ASTM has about 12,000 members. Its membership is composed of three categories: producers, consumers, and general interest (academic, etc.). Its specifications are written by technically qualified committees composed of members from the three categories.

The Indictment charges that ASTM was a co-conspirator with, or at least an unwitting tool of, producer-members who criminally conspired to frame specifications for asbestos-cement pipe and couplings in such a way that certain competi-

the relief requested in that Motion was permission to submit the attached statement, which relief has been granted by the filing of that statement.

tors' products would be unacceptable to those who relied on the specifications. ASTM claims this Indictment damages it in two ways: it discourages reliance on its specifications and it discourages participation on the specification-writing committees by representatives of industry who would otherwise serve voluntarily and without compensation. In connection with this latter contention, ASTM particularly urges that members in the producer category are reluctant to serve for fear that, if a specification promulgated cannot be met by some of their competitors, even though the standard is scientifically sound, they will be vulnerable to charges similar to those of Paragraph 7(b) or 15(f) of the Indictment. Because ASTM is not made a defendant, it argues that it has no way to vindicate itself other than by this application. In support of its application, ASTM makes these arguments, inter alia:

(1) ASTM argues that there was no evidence presented to the jury in the Johns-Manville case to substantiate paragraphs 7(b) and 15(f) of the Indictment.

(2) ASTM argues that in point of fact it is not a member of this or any other conspiracy in restraint of trade, nor is it the foil of any such conspiracy, and that, furthermore, ASTM is so constituted that an involvement in such a conspiracy is an impossibility in fact. ASTM offered evidence in support of its positions at the June 16 hearing.

(3) ASTM argues that it is impossible, as a matter of law, for it to be a member or means of a conspiracy in restraint of trade because its activities fall within the doctrine of Eastern R. R. Presidents Conf. v. Noerr Motor, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). ASTM's position is that because its specifications are adopted without reservation or question by various units of government, those who wish to influence ASTM specifications are entitled to do so as part of the citizen's freedom to petition his government or are entitled to at least a freedom of expression analagous to that right.

This court has jurisdiction to entertain the application of ASTM. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 139–141, 71 S.Ct. 624, 95 L.Ed. 817 (1951). See, also, Application of United Electrical, Radio & M. Workers, 111 F.Supp. 858 (S.D. N.Y.1953), and In re Presentment by Camden Co. Grand Jury, 34 N.J. 378, 169 A.2d 465 (1961). In the Joint Anti-Fascist case, supra, 341 U.S. at 140–141, 71 S.Ct. at 632, the court said that " * * * the standing of the petitioners to bring these suits is clear. The touchstone to justiciability is injury to a legally protected right and the right of a bona fide charitable organization to carry on its work, free from defamatory statements of the kind discussed, is such a right."

Accordingly, the court will affirm those requested findings of fact which appear to it to be justified by the record in the instant case. The Government may make an appropriate application if it comes forward in the trial of the remaining defendants with evidence contrary to these findings and offers this record at a subsequent hearing in this action. It is not appropriate to rule on many of the requested conclusions of law, since such a ruling would involve an advisory opinion. Cf. Pennington v. United Mine Workers of America, 325 F.2d 804 (6th Cir. 1963), cert. granted 84 S.Ct. 1333 (1964).

The first paragraph of ASTM's able brief, filed June 30, which is attached to this Memorandum Opinion, contains this language:

"The crucial issue for this Court to resolve is whether the standardization activities conducted by AS TM are so valuable and necessary to the public, and the possibility that these activities could ever constitute an unreasonable restraint of trade so far removed, that the Society and its activities should be accorded some measure of protection under the anti-trust laws."

The authorities cited above show that ASTM is entitled to protection

against defamation, but no authorities have been produced showing that all activity it may undertake is exempt from the antitrust laws. Conceivably, though it is most unlikely, ASTM could fall into the control of selfish persons unlike the dedicated, selfless scientists who now guide it. For this reason, several of the sweeping conclusions of law requested by ASTM's able counsel cannot be affirmed. The courts will be available for the protection of ASTM in its fine work on a case by case basis until such time as the legislature provides more definite rules for application of the antitrust laws to its work. Cf. § 7(3), Restrictive Trade Practices Act of 1956 (4 & 5 Eliz. 2, c. 68; 36 Halsbury's Statutes of England 931), referred to at pp. 3–4 of the above-mentioned brief filed 6/30/64. The right of any member of ASTM to state his or her views on the proposed standards being considered by that Association is clear. See, for example, Brotherhood of Railroad Trainmen v. Virginia, 84 S.Ct. 1113 (1964); N. L. R. B. v. Fruit and Vegetable Packers, etc., Local 760, 84 S.Ct. 1063 (1964); Eastern R. R. Presidents Conf. v. Noerr Motor, supra, 365 U.S. at 137, 81 S.Ct. 523.[2]

For the foregoing reasons, the court does have jurisdiction of this application and of the related application in Misc. 2740. If no Motions or appeals challenging this Memorandum Opinion or the attached order are filed within thirty days, the Clerk will be directed to attach to paragraphs 7(b) and 15(f) of the Indictment in Criminal No. 21118 a reference to this document so that the court's records will not improperly reflect on a corporation which is entitled to the presumption of innocence.[3]

2. Cf. Roofire Alarm Co. v. Underwriters' Laboratories, Inc., 188 F.Supp. 753, 754 (E.D.Tenn.1959), aff'd. 284 F.2d 360 (6th Cir. 1960), and Roofire Alarm Company v. Royal Indemnity Company, 202 F. Supp. 166 (E.D.Tenn.1962), aff'd 313 F.

2d 635 (6th Cir. 1963), cert. den. 373 U.S. 949, 83 S.Ct. 1678, 10 L.Ed.2d 704 (1963).

3. A Supplemental Memorandum in Support of ASTM's Motion to Strike is filed as Document 309 in Criminal No. 21118.