Joseph A. DELPIT

v.

Donald L. BECKNER and a United States Grand Jury.

Civ. A. No. 79–534–B.

United States District Court, M. D. Louisiana.

Nov. 30, 1979.

Murphy W. Bell, Robert C. Williams, R. Judge Eames, Baton Rouge, La., for plaintiff.

C. Michael Hill, Asst. U. S. Atty., Baton Rouge, La., for defendants.

## DECISION AND ORDER

### JOHN V. PARKER, District Judge.

Plaintiff, Joseph A. Delpit, has filed a "PETITION FOR DECLARATORY JUDGMENT INJUNCTIVE RELIEF AND/OR EXTRAORDINARY WRIT OF MANDAMUS" seeking an order from the Court expunging certain references to Delpit from a grand jury indictment which plaintiff claims names him as an unindicted co-conspirator. The indictment in question was returned by a grand jury in this district on October 27, 1978, in Criminal Number 78–35, "*United States of America v. Lee T. Wesley and Kent J. Smith, Sr.*"

Motions for summary judgment have been filed by each side. It is undisputed that plaintiff Delpit is a duly elected member of the Louisiana House of Representatives, that he is a black man,[1] that he was not named as a defendant in the *Wesley-Smith* indictment, that he was not indicted in any other indictment relating to the *Wesley-Smith* affair, and that Wesley and Smith have been tried and each convicted of five of the six counts in the indictment. Those convictions are on appeal.

█ Initially, the government asserts that no relief can be granted to plaintiff because the term of the grand jury which returned the indictment has long since expired and it has been discharged. The government also claims that the U. S. Attorney has no authority to alter a grand jury indictment, once returned. Under *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975), and the authorities cited and discussed therein, plaintiff has standing to challenge the wording of the indictment, this is an actual case or controversy and, should plaintiff be entitled to relief, this Court has the power to grant it.

The indictment against Wesley and Smith, returned October 27, 1978,[2] contains six counts and is twenty-one pages in length. Count I generally charges a conspiracy to violate 42 U.S.C. § 2971f, to willfully misapply funds which were the subject of a federal grant and a conspiracy to defraud the United States by impairing and obstructing governmental functions in violation of 18 U.S.C. §§ 371 and 372. The remaining counts are substantive charges of willful misapplication of funds in violation of 42 U.S.C. § 2971f.

Plaintiff claims that the indictment marks him as an unindicted co-conspirator with Wesley and Smith, while the government denies that he is named as such. Without question in the Fifth Circuit, grand juries may no longer name and identify unindicted co-conspirators in their indictments. *U. S. v. Briggs, supra.*

The indictment charges that Wesley and Smith were, respectively, the director and the administrative assistant to the director of the East Baton Rouge Parish "Anti-Poverty Agency" known as "CAI." The conspiracy count, the only one in which Delpit is mentioned, alleges a "scheme" at great length and also alleges many overt acts allegedly undertaken in furtherance of the conspiracy. Those portions of the indictment pertinent to this dispute read as follows:

### "COUNT I

·   ·   ·   ·   ·

"B.  CONSPIRACY

"From on or about March 1, 1976, and continuously thereafter through on or about September 30, 1977, in the Middle District of Louisiana, LEE T. WESLEY and KENT J. SMITH, SR., who are defendants herein, did unlawfully conspire among themselves *and with other persons known and unknown* to the Grand Jury, to commit offenses against the United States of America, to wit  .  .  .." (Indictment, p. 2—Emphasis supplied)

---

1.  Plaintiff's pleadings contain allegations of racial discrimination as the basis for reference to him by the grand jury. Plaintiff has not offered a scintilla of evidence in support of those allegations and they are considered unproven and abandoned.

2.  This was a superceding indictment. The original indictment apparently did not make reference to petitioner.

"C. SCHEME

. . . . .

"In 1972, with the assistance of Joseph A. Delpit and Richard Turnley, Jr., now both State Representatives to the Louisiana Legislature from East Baton Rouge Parish, LEE T. WESLEY was appointed Executive Director of CAI." (Indictment, p. 3)

"On one occasion in May, 1977, $12,-151.70 in funds were withdrawn from the account of H&B of Louisiana, Inc. by Henry Baptiste, converted to cash and disbursed as follows:

"(1) $2,500.00 of those funds were used to pay part of a debt owed to the American Bank & Trust Company by Joseph A. Delpit, said debt being in the form of a demand note made payable to the American Bank & Trust Company in the amount of $16,055.79, dated November 5, 1975, with Richard Turnely [sic], Jr., Walter C. Dumas and Henry Baptiste being liable as endorsers for the payment of said note.

"(2) $2,500.00 of those funds were used to pay part of a debt owed to the American Bank & Trust Company by Richard Turnley, Jr., said debt being in the form of another demand note made payable to the American Bank & Trust Company in the amount of $16,055.79, dated November 5, 1975, with Joseph A. Delpit, Walter C. Dumas and Henry Baptiste being liable as endorsers for the payment of this note.

"(3) $2,500.00 of those funds were used to pay part of a debt owed to the American Bank & Trust Company by Walter C. Dumas, said debt being in the form of another demand note made payable to the American Bank & Trust Company in the amount of $16,055.79, dated November 5, 1975, with Joseph A. Delpit, Richard Turnley, Jr. and Henry Baptiste being liable as endorsers for the payment of this note.

"(4) And the remainder of those funds or $4,651.70 were used to pay part of a debt owed to the American Bank & Trust Company by Henry Baptiste, said debt being represented by several notes including a note in the amount of $16,055.79, dated November 5, 1975, with Richard Turnley, Jr., Joseph A. Delpit and Walter C. Dumas being liable as endorsers for the payment of this note." (Indictment, pp. 5 and 6)

The government, in its motion for summary judgment, insists that the above-quoted allegations were necessary to explain the offenses with which Wesley and Smith were charged and that neither Delpit nor the other unindicted persons named in the indictment were "unindicted co-conspirators." In support of that position, the government attaches a portion of the transcript from Criminal No. 78–35. There, the attorneys for Wesley and Smith made a motion to strike all of the above-quoted language from the indictment on the grounds that it was surplusage. The transcript indicates that the attorneys for Wesley and Smith did not consider that the other people named, including Delpit, were co-conspirators. Judge Hunter, who presided at the trial of Wesley and Smith, declined to grant the motion to strike but noted that it was "without prejudice to the defendant[s] to object to evidence in support of these portions of the indictment when the case goes to trial." (Transcript, p. 26)

There is a growing tendency of the judiciary to exercise more control over pronouncements by grand juries, whether in the form of formal indictments or reports issued by the jury. Expunction of portions of indictments and reports has been justified upon the basis of the inherent unfairness of official accusation of wrongdoing without provision of a forum for vindication of those thus accused. That situation is aptly illustrated by *United States v. Briggs, supra.* There, federal grand jury indictment named ten individuals as co-conspirators but only indicted seven of them. Upon application of two of the named unindicted co-conspirators, the Court of Appeals ordered their names expunged from the indictment, despite the fact that the named defendants had been tried and acquitted.

The government correctly points out here that this indictment does not use the words "unindicted co-conspirators" in connection with Delpit's name and thus argues that *Briggs* is distinguishable.

██ Fair interpretation of the language of the indictment quoted above is that Wesley and Smith conspired with each other "and with other persons known and unknown" to violate the law, that their scheme included securing Delpit's assistance to obtain Wesley's appointment as executive director and that $12,151.70 of the "willfully misapplied" funds were used to pay promissory notes of which Delpit was either co-maker or endorser. While the indictment does not state in so many words that Delpit was one of the "known and unknown" co-conspirators, it certainly does state that Delpit helped Wesley get the job that put Wesley in charge of the funds and that at least some of the funds were misapplied to Delpit's benefit. At least, the indictment stops barely short of declaring that Delpit was part of the "scheme"; at best, it could be inferred that Delpit was the beneficiary of some sort of stipulation *pour autri* of misapplied public funds. Certainly he is not identified as the victim in this indictment.

These allegations clearly smack of wrongdoing on Delpit's part. He has been stigmatized as fully as though the indictment in so many words had described him as "unindicted co-conspirator." Despite the government's insistence, the references to Delpit are not necessary to explain the offenses charged. It does not matter who assisted Wesley in getting the job—unless that person is part of the scheme. It does not matter how Henry Baptiste disbursed the cash as long as it was not used for its intended purposes. The details could have been furnished by bill of particulars. The naming of Delpit as one who helped Wesley get the job and as the beneficiary of misapplied funds creates the impression that he was part of the scheme, but he was not named as a defendant. Had he been named as such, then a jury would have passed upon the sufficiency of the evidence to support the allegations.

This Court reads *United States v. Briggs, supra,* as reaching sophisticated accusations of wrongdoing in indictments as well as those of a direct nature. As the Court there stated:

"Visiting opprobrium on persons by officially charging them with crimes while denying them a forum to vindicate their names, undertaken as extra-judicial punishment or to chill their expressions and associations, is not a governmental interest that we can accept or consider." (514 F.2d at 806)

The Court is bolstered in this conclusion by cases such as *In Re Grand Jury Proceedings,* 479 F.2d 458 (5th Cir. 1973), where the Court of Appeals ordered certain portions of a federal grand jury report expunged. In that case a federal officer had testified in a drug case in Texas state court. The presiding Texas judge dismissed the case and criticized the testimony of the federal narcotics agent. Thereafter, a federal grand jury issued a special report which was highly critical of the proceedings in state court and absolved the federal agent from any wrongdoing. The Court of Appeals found that those portions of the grand jury report bore little relevance to any federal subject matter and concluded that the grand jury had no business concerning itself with a purely local affair. In that case Judge Ainsworth pointed out that cases involving expunging of grand jury reports and indictments, while dependent upon the facts of each case, all have some significant relevant factors: whether the report describes general community conditions or whether it refers to identifiable individuals; whether the individuals are mentioned in public or private capacity; the public interest in the contents of the report balanced against the harm to the individuals named; the availability and efficacy of remedies; and finally, whether the conduct described is indictable.

Applying these factors to the case before this Court, it is noted that Delpit is certainly named as an identifiable individual. He is mentioned both in his public and his private capacity. The public interest in the grand jury indictment where no forum is granted to Delpit certainly falls far short of

balancing the harm to the individual; there is no other remedy open to Delpit, and certainly, if Delpit was a part of the scheme, his conduct was indictable.[3]

In sum, *Briggs* and *In Re Grand Jury Proceedings, supra*, both indicate that this indictment should be expunged. In addition, cases such as *Application of United Electrical, Radio and Machine Workers of America*, 111 F.Supp. 858 (S.D.N.Y.1953); *Hammond v. Brown*, 323 F.Supp. 326 (N.D. Ohio 1971), affirmed, 450 F.2d 480 (6th Cir. 1971); *Application of American Society For Testing and Materials*, 231 F.Supp. 686 (E.D.Penn.1964); *Application of Turner and Newall, Ltd.*, 231 F.Supp. 728 (E.D.Penn. 1964), all offer support for Delpit's petition here. *Cf., In Re Report and Recommendation of June 5, 1972 Grand Jury*, 370 F.Supp. 1219 (D.C.D.C.1974).

This indictment was returned more than a year ago and the named defendants have already been tried and convicted. Delpit has offered no explanation for his long delay in seeking relief. Presumably, wide publicity has been given to the contents of the indictment and any relief granted by this Court could relate only to the record—to posterity. In *Briggs*, the Court considered that the injury to one thus branded was "real, direct and continuing" (514 F.2d at 800) and despite the fact that the named defendants had long since been tried and acquitted, ordered the indictment expunged. Thus, despite the delay, plaintiff is entitled to the relief sought.

For the reasons stated above, the motion for summary judgment filed by the government is DENIED; the motion for summary judgment filed by Delpit is GRANTED. Accordingly:

IT IS ORDERED that the Clerk of this Court expunge from the grand jury indictment in Criminal Number 78–35, "*United States of America v. Lee T. Wesley and Kent J. Smith, Sr.*" all references to Joseph A. Delpit.

**3.** The government declares that at the trial of Wesley and Smith evidence was offered tending to show the correctness of the allegations in the indictment relating to Delpit. Assuming that to be so, it has no relevance to the issues here. As pointed out in *Briggs*, probable cause

on the basis of which the grand jury might have made Delpit a defendant is unrelated to the question of whether the grand jury may accuse him *without* making him a defendant. (514 F.2d at 807)